**B. J. BARNHILL et al., Appellants,**

v.

**The STANDARD INSURANCE COMPANY, Appellee.**

**No. 5639.**

Court of Civil Appeals of Texas.

El Paso.

Dec. 30, 1964.

Rehearing Denied Jan. 27, 1965.

W. R. Barnes, Odessa, Snodgrass, Smith, Rose & Finley, Kerr, Gayer, Ray & Lyons, San Angelo, for appellants.

Shafer, Gilliland, Davis, Bunton & Mc-Collum, James M. O'Leary, Odessa, for appellee.

FRASER, Chief Justice.

Our former opinion in this case is withdrawn, and the following opinion substituted therefor:

## OPINION

This is a controversy regarding the construction of an insurance policy described by the parties as being an M & C liability policy, purporting to insure the payment of obligations of appellant Barnhill involving his operations as a truckman, or trucker, who owned his own truck and had been doing occasional work, described as hauling, for one of the parties, to-wit, M & B, for more than a year. Appellee Standard Insurance Company had written two insurance policies for the insured, one described as an automobile policy, and the other being the above-mentioned M & C liability policy.

The record relates that Cities Service Oil Company owned an oil well in Schleicher County, Texas which they desired to clean out and make into a disposal well. For this purpose they hired Pool Well Servicing Company, Inc. Cities Service also hired a company known as M & B to furnish the fishing service which was required in order to remove certain objects from the well.

M & B, in turn, hired Barnhill, the trucker, to pick up and deliver to the well site certain equipment and fishing tools, and this Barnhill did. Barnhill met a Mr. Simpson, an employee of M & B, at Big Lake, Texas and followed him to the lease or well site. After Mr. Barnhill had unloaded the tools under the direction of Mr. Simpson (described as M & B's fisherman), in which endeavor he was assisted by the rig crew, he prepared to return to his home in Odessa, which appears to be the only office or premises of any kind that he owned, operated or used for his business purposes. As he was maneuvering his truck to leave the well site, a part of his truck caught on a guy wire attached to the derrick, and the derrick and pipe stacked therein all fell over. It does not seem to be disputed that the action of Barnhill's truck in catching the guy wire of the derrick caused the derrick and stacks of pipe therein to fall to the ground and be damaged. Pool recovered judgment in Schleicher County for $27,500.00 against Barnhill, but recovered nothing against the M & B Company, which he had also sued as a defendant.

Appellee Standard Insurance Company paid off the automobile policy of $10,000.00, but declined payment of any amount under the M & C policy of liability. This was a suit for declaratory judgment filed by appellee Standard Insurance Company against Barnhill and Pool asking the court to interpret the M & C insurance contract. M & B Fishing Tool Company intervened in the suit. Standard, M & B and Barnhill filed motions for summary judgments. Upon motion made and heard, the trial court issued an order of severance eliminating the M & B Company and the cross-action of Mr. Barnhill from this lawsuit, and designated or placed them in the category of a separate lawsuit, leaving the lawsuit with which we are here concerned described as No. B–19,-739, and the new lawsuit, involving M & B and Barnhill's cross-action, described as No. B–22,549.

It appears generally agreed between the parties that we are here concerned with the construction and application of a clause or paragraph of the M & C liability contract, sometimes described as an exclusionary clause. The policy states as follows:

"EXCLUSIONS:

"This policy does not apply:

"(a) under division 1 of the Definition of Hazards, and under coverage C, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from premises owned by, rented to or controlled by the named insured, except insofar as this part of this exclusion is stated in the declarations to be inapplicable, (2) automobiles if the accident occurs away from such premises or the ways immediately adjoining, or (3) aircraft; * * *."

It is argued by the appellants that Barnhill was in control of or exercising control of the premises at the time his truck caught the guy wire and pulled the derrick and pipe down. If this is true, then—argue the appellants—the exclusionary clause above set forth does not apply, and appellee is liable under its M & C liability policy; and so we come to the question then clearly set forth: Was Barnhill in control, or exercising control, of the premises to any degree sufficient to satisfy the terms of the policy under which he was insured by Standard Insurance Company?

As stated in appellants' brief, all parties filed for declaratory judgments and for summary judgments as well. The court granted the motion of Standard Insurance Company for such summary judgment to exclude the accident from coverage under the M & C policy; and it is from this action of the trial court that this appeal has been taken.

Appellants have brought up three points; first, that the premises where the rig was wrecked were "controlled" by appellant Barnhill within the meaning of the M & C liability policy; second, that the "premises" covered by the M & C liability policy included the job sites in Texas on which appellant Barnhill made deliveries in the operation of

his truck. Appellants state the automobile exclusion applied to other coverage only. Appellants' third point is that M & B was entitled to be a party to and participate in the case before us, even though the trial court had severed M & B and set its action up as a separate lawsuit.

We believe the action of the trial court was correct. Both parties refer to and rely upon American Fidelity & Casualty Co. v. Traders & General Ins. Co., 160 Tex. 554, 334 S.W.2d 772, decided by our Supreme Court in December of 1959 and reconsidered, and a motion for rehearing denied, in March of 1960. In this case it is stated that appellee denied liability under an M & C policy on account of provisions, among others, reading as follows:

" '(This policy does not apply:) under Coverages B and D, except with respect to operations performed by independent contractors, to watercraft while away from premises owned, rented, or controlled by the Named Insured, automobiles while away from such premises or the ways immediately adjoining * *.' "

This, in effect, is similar to the so-called exclusionary provisions of the case before us. The Supreme Court in the cited case was considerably concerned with the question of control, and states that it found no case which it regarded as being directly in point, but did mention others that the court felt supported its opinion or conclusion. In such case it is significant to note that the insured, known as the Mizell Truck Lines, was being operated at the time by one Roy Mizell, one of the brothers comprising the company. They had two trucks at the well site, and their task was to move and stack various component parts of the superstructures of the rig to new locations. The Supreme Court states: "All of the activities other than the mechanical dismantling of the rig itself were under the direction of Roy Mizell. He determined how the trucks were to be used, where the components of the rig were to be stacked, and supervised both the loading and the unloading of the trucks." The Court then states that it considers this to be sufficient to establish "control" under the terms of the insurance policy. The Court went on to say:

"While the question is not free from doubt, we have concluded that Mizell was in control of the premises where the accident occurred. Black's Law Dictionary (4th Ed., 1951) defines 'control' as 'Power or authority to manage, direct, govern, administer, or oversee.' In State v. Camper, Tex.Civ.App., 261 S.W.2d 465, 468, it is stated that 'control' is 'synonymous with management.' "

In the American Fidelity & Casualty Co. case it is clear that Mizell, according to the Court's opinion, was really directing and controlling the operation with the exception of the activity described as the mechanical dismantling of the rig itself.

We do not have that situation in the case before us. Pool was hired by Cities Service to process the well. Cities Service required certain tools and services owned by or in the possession of the M & B Company. This company hired Barnhill to pick them up and deliver them to the well site. This was done by Barnhill, and it was only when he was leaving that the accident occurred. We do not find sufficient evidence here to indicate that Barnhill exercised control, other than as to who drove his truck. He apparently was instructed where to go and was assisted and directed in the unloading of the material on his truck. It is not apparent that he gave any orders to anyone regarding the main operation, which was to fish certain equipment out of the well and process or repair it according to the wishes of Cities Service. In our opinion Barnhill occupied no greater status than that of an independent contractor delivering material to a well site. Other than that he had no interest in, or control over, the operation. Presumably had he found a dangerous condition he could have declined to proceed, or discussed where he was to place his truck, or how he was to leave; but these things apparently did not happen, and in our opinion the key word

here with reference to control, as in the American Fidelity case, is the word "premises". Barnhill may have had control of his truck, because he did own it, but beyond that there is an insufficiency of any evidence to show that he had, or exercised, any control over the operation in progress, or premises. He was simply hired to haul material and deliver it, which he did. Standard paid off the automobile policy and denied liability under the M & C policy, and we think the trial court was correct in sustaining the position of appellee with reference to the M & C policy. The provisions of the policy before us and the one before the Supreme Court in the case cited above are similar, but we do not believe that the facts here are similar or are sufficient to create a picture of "control". On the basis of the record as we read it, it is very doubtful that the employees of Pool or M & B would have obeyed or accepted any orders from Barnhill other than as to the unloading of his truck. The truck had been unloaded when the accident happened, and Barnhill was certainly on his own and starting home when he caught the guy wire with his truck. Again we repeat that we are dealing with the matter of control of premises or operation, while the record shows only that if Barnhill was in control of anything, it could have been nothing more than his truck. The record shows that the fisherman was supposed to supervise the manner and method of using the fishing tool, and that Pool was hired to direct, supervise and complete the processing of the well after the fishing was completed. So Barnhill's sole function was to drive out to the well site, unload the equipment, and come home.

We believe, therefore, and so hold, that the American Fidelity case, supra, controls and defines the matter before us in its description of the action and definition of what the word "control" means. There are other cases that have passed on the matter as, for example, in Southwestern Indemnity Co. v. National Surety Corp., 277 F.2d 545 (5th Cir. 1960), which was a Texas case. The contract involved there provided that the in-

sured, who was repairing a highway, was responsible for preservation of all material or installations, and was to provide suitable drainage and maintain the roadway in good and passable condition until final acceptance. This responsibility naturally called for and required control of the operation and premises involved. This lawsuit involved an accident between an automobile and a vehicle belonging to the insured, which was parked on the highway. This contract also stated that until acceptance of the work it would be under the charge and care of the contractor. The contract involved had substantially the same exclusionary clause as we are dealing with in this matter, and the court held that the insured had "control" of the premises. Other cases that are useful and informative are: Pacific Employers Ins. Co. v. Hartford Accident & Ind. Co., 228 F.2d 365 (9th Cir. 1955); Sam Finley, Inc. v. Standard Accident Ins. Co., 41 Tenn.App. 417, 295 S.W.2d 819 (1956). There are many other cases dealing with this matter which we do not cite, and our examination of them and the reasoning of the various courts involved, along with that of our own Supreme Court, convinces us that Barnhill had no control over the premises where the accident happened, and that the exclusionary clause, therefore, was applicable.

■ Appellee has submitted a motion asking that this court dismiss the appeal of M & B Fishing Tool Co., Inc. (referred to as M & B) because the act of the trial court in severing M & B from the matter on appeal before us left M & B with nothing to present to this court in the case presently before us. This is evident from the fact that after the action of severance by the trial court, M & B and Barnhill's cross-action were given a new number, to-wit, B-22549. There has been no judgment of any kind, so far as we know, in that case, and M & B, having no final judgment rendered against it, could not properly be before us. Further, M & B did not, according to the record, make any exception to the order of severance, and the record indicates that such order of severance was the result of an "agreement of the

parties". Therefore, without any exception or objection to the severance, M & B has no complaint here in this case; and the other case, to which it was relegated by the severance, is not on appeal at this time. Appellee's motion to dismiss the appeal of M & B in this case is granted.

Appellee has submitted another motion to dismiss the entire appeal and affirm on certificate on the basis that, in appellee's opinion, Pool and Barnhill have not perfected an appeal to this court due to failure to file a transcript within the proper time. Without going into the various features and arguments, we hold that in our opinion the appeal, as such, was substantially perfected, and this motion of appellee is overruled. The motion and arguments thereon are pretty much based on who applied for the transcript and the numbers thereon, etc.; but the record we have before us arrived within the legal time limit and, we think, substantially meets the requirements relating to appeals to this court.

Appellants' Points 1 and 2, and Point 3, are therefore all overruled, and the judgment of the trial is accordingly affirmed.