# SAM FINLEY, INC., for the use and benefit of FIDELITY AND CASUALTY COMPANY OF NEW YORK v. STANDARD ACCIDENT INSURANCE COMPANY. —295 S. W. (2d) 819.

Middle Section.   Nashville.   July 27, 1956.

Rehearing denied August 31, 1956.

Petition for Certiorari denied by Supreme Court December 7, 1956.

418

Allen R. Cornelius, Jr., Nashville, for plaintiff.

Hume, Howard, Davis & Boult, Edwin F. Hunt, Nash-ville, for defendant.

SHRIVER, J.   The parties will be referred to as they appeared in the Court below.

# I

This suit involves the question of coverage under a policy of liability insurance. Complainant, a highway contractor, brought suit for the use and benefit of Fidelity and Casualty Company of New York, to recover contribution from Standard Accident Insurance Company toward the amount paid and expenses incurred by Fidelity and Casualty in settlement of claims arising out of an explosion that occurred during the unloading of asphalt from a railroad tank car, by employees of complainant.

The contractor had insurance policies in both companies but the Chancellor held that defendant's policy did not render it liable and dismissed the bill.

Complainants appealed.

# II

## Assignments of Error

There are six assignments of error but, taken together, they simply assert that the Chancellor erred in finding that the policy in question provided coverage only for liability arising out of an accident occurring on premises owned, rented or controlled by the insured, or the ways immediately adjoining those premises; and if the coverage was so restricted, in holding that the accident did not occur on premises owned, rented or controlled by the insured.

The fifth and sixth assignments of error are too general for us to consider, since they only assert that the Lower Court was in error in finding that the defendant was not liable under the insurance policy in question and erred in dismissing complainant's bill.

## III

Counsel for defendant, in his brief and argument states his position as follows:

"By the terms of its policy, Standard is not liable for accidents in connection with the use of automobiles while away from premises owned, rented or controlled by Sam Finley, Inc., the named insured, and the accident here involved occurred in connection with the use of automobiles while away from such premises."

He states as a further defense that Standard's policy expressly excepts property damage to automobiles from coverage, and that it does not apply to damage occurring from, or as an incident to, the loading or unloading of motor vehicles.

## IV

### The Facts

Complainant, Sam Finley, Inc., was engaged in highway construction work on two projects in Montgomery County, Tenn., at the time of the accident in question.

Complainant also operated an asphalt plant and stone quarry situated about eight miles southeast of Clarksville, and, in connection with its operations, was insured under two insurance policies, to wit, Policy No. A22259, issued by defendant, Standard Accident Insurance Co., which provided general liability coverage for accidents occurring "On premises owned, rented or controlled" by the insured, and Policy No. XA18187, issued by the Fidelity and Casualty Company of New York, which was an automobile liability policy.

Fidelity and Casualty admitted liability under its policy and, after suit was brought against complainant, effected a settlement with third parties who were claimants by reason of the accident in question.

Under Standard's policy, coverage for bodily injury liability is subject to an exclusion by endorsement 1910, contained in said policy, which exclusion, with omissions not relevant to the present controversy, reads as follows:

"It is agreed that the policy does not apply under coverage A * * * (1) to the ownership, maintenance or use of automobiles while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining. * * *."

The word "automobile" is defined by the policy as "a land motor vehicle or trailer".

Coverage B of Standard's policy is for "Property Damage Liability—Automobile—'none' ", Sam Finley, Inc. as insured did not carry this coverage.

Coverage "C" of Standard's policy is for "Property Damage Liability—Except Automobile". This coverage is subject to an exclusion (IV, e) in the body of the policy, which exclusion, with omissions not relevant to the present controversy, provides:

"This policy does not apply * * * (e) under coverage C * * * to automobiles while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining, or the loading or unloading thereof."

Sam Finley, Inc., as insured, carried coverage "C" subject to the quoted exclusion.

At the time in question, complainant was taking team track delivery of railroad tank cars on a track in the yard of the Tennessee Central Railway near Clarksville, Tenn. Complainant did not have any contract or industrial track agreement covering such yard or siding.

It is shown by the proof that team tracks, as distinguished from industrial tracks, are part of the facilities owned by railroads and available to all members of the shipping public. These team tracks are analogous to freight depots in that they bear the same relation to carload freight that such depots bear to less than carload freight. Such tracks are owned, operated and maintained by the railroad carrier.

The team track on which the complainant received delivery was frequented by the trucks of complainant several times a day and complainant kept a tank car heater and booster there. Workmen of Sam Finley, Inc. started work from this yard or siding, which was used by complainant for a period of about twelve months. Said siding, or team track, was several miles distant from the asphalt plant and stone quarry operated by complainant, and was a substantial distance from the road project of complainant in Montgomery County.

At the time in question, employees of complainant were unloading cutback asphalt from a railroad tank car, and said liquid asphalt was being loaded into a transport truck with a tank truck distributor being used as a pump to convey the material into the tank truck.

The distributor truck and the transport truck were parked side-by-side along the railroad track, the distributor truck being about six feet from the railroad tank car,

and the transport truck about four feet from the distributor.

While this operation was proceeding, there was an explosion which blew out the front of the tank truck and hurled flaming liquid asphalt out over the surrounding area.

In this accident, Mrs. Carter Baggett, who resided near by, sustained personal injuries, and the owner of the property and the woman's husband sustained damages.

The automobile insurer, Fidelity and Casualty Company of New York, admitted liability under its policy and compromised and settled the claims of Mrs. Baggett and the others.

Defendant Standard Accident Insurance Company denied liability under its policy but did not question the reasonableness of the amounts paid in settlement by Fidelity and Casualty.

The record shows that the distributor, which was used as a pump to convey the material from the tank car to the vehicles of complainant, was "a tank and pump mounted on a truck". Both the transport truck and the distributor truck were used to transport asphalt from the railroad cars to a storage tank some distance away, and complainant's witnesses, Haskins, Bowder and Gulledge refer to the transport vehicle and the distributor vehicle as "trucks". It was stated by the witness Bowder that what exploded was a tank mounted on the transport truck.

The witness Gulledge had climbed upon the tank of his truck to get the hose out when the explosion occurred and he was thrown some thirty or forty feet through the air

but survived. He identified himself as a truck driver and the distributor truck was identified by him as a "Mack truck".

Counsel for defendant points out that, not only does the evidence show that the accident herein involved, occurred in connection with the use of automobiles, (land vehicles), but also that complainant's bill avers this, and the defendant's answer admits it.

In complainant's bill (sec. 3) it is averred that the employees of Sam Finley, Inc. were pumping cutback "from the tank car to a tank truck".

In sec. 5 of the bill it is averred, "The motor vehicle on which the distributor in use at the time of the above mentioned accident was mounted, was specifically covered. Also, the tank truck into which your complainant's men were pumping the cut back asphalt from the railroad tank car, was specifically covered".

Thus, as hereinabove indicated, it is urged by counsel for defendant that, under the express language of defendant's policy, particularly indorsement 1910 (above quoted), defendant is liable only if the accident occurred on premises "Owned, rented or controlled" by the complainant.

It seems to be conceded that Tennessee Central Railway owned the premises where the accident occurred, therefore, as is argued by counsel for defendant, the question of ownership is settled and defendant would not be liable as an owner of the premises.

Then again, there is nothing in the record to show that the premises on which the accident occurred were leased or rented by the complainant at the time of the accident.

Therefore, under the aforesaid provisions of the policy, liability of the defendant must be based on the contention that complainant ''controlled'' the premises where the accident occurred, and this is the main question involved in this suit.

The record shows, without dispute, that there were other premises in Montgomery County which were owned, rented or controlled by the complainant at the time in question, as, for example, an asphalt plant and stone quarry that was operated by the complainant, and situated about eight miles southeast of Clarksville. It was to storage tanks located on these premises that the asphalt, which was being unloaded at the time of the accident, was to be transported.

█ It is urged by counsel for defendant that Standard was obligated under its policy to protect the insured from liability by reason of any accident on these premises under its control, except to motor vehicles which were being loaded or unloaded, but said premises were entirely separate and apart from the railroad yards and team track where the accident occurred.

It seems to us that the insured, Sam Finley, Inc., controlled the road projects in Montgomery County on which it was working under State Highway contracts, in the sense contemplated by the language of the policy in question. Complainant, as is pointed out, had authority to place barriers, exclude the public therefrom, to determine what persons were permitted thereon, and under what conditions. Thus, the policy of the Standard covered the premises under such control by the complainant.

It appears from the record that there was no premium paid by the complainant for property damage liability occasioned by an automobile owned or operated by it. On the other hand, there was a policy provision (B) excluding ''automobile liability''. Complainant had insurance covering this type of liability with Fidelity and Casualty Co. of New York and, therefore, there was no apparent reason or necessity for paying additional premiums for such coverage in the defendant company.

Counsel for defendant cites the case of Miller Engineering Co. v. Louisiana Railway & Navigation Co., 144 La. 786, 81 So. 314, 317, with reference to control of team tracks as follows:

'' ' ''There is a difference between industrial tracks and team tracks. The former are for the handling of carload freight from and to such plants. The cost of construction is usually borne in part by the owners of the plants. Carload freight is switched to and from the plants irrespective of whether the carrier performing the switching service participated in the line haul or not. Shippers have no part in the construction or maintenance of team tracks. They are analogous to freight depots in that they bear the same relation to carload freight that such depots bear to less than carload freight.'' ' ''

But it is urged by counsel for complainant that the area, or the point at which the accident happened, was under the control of complainant for the purposes of the policy in question by reason of the fact, (1) that trucks belonging to complainant went there several times a day, (2) that complainant kept a tank car heater and booster

there to be used in unloading railroad tank cars, (3) that workmen of complainant started to work from this point.

We must agree with counsel for defendant that these circumstances do not make out a case of "control" under the terms of the policy. Such an assembly point for the workmen of a highway contractor might have been at the Court House or the Post Office or at some other place which would not, necessarily, have given him control of that place, and the fact of his maintaining a pump or other equipment at that place would not, necessarily, have given him "control" of the property, as contemplated by the insurance contract.

■ We are of opinion that there is no substance in the contention that the language of the policy in question is ambiguous. We think it is perfectly susceptible of clear understanding.

In Brown v. Tennessee Auto Insurance Co., 192 Tenn. 60, 237 S. W. (2d) 553, 554, it was said by our Supreme Court:

"The policy in question is of standard form and there is no ambiguity whatever in the endorsement or rider. Where there is no ambiguity, it is the duty of the Court to apply to the words used their ordinary meaning and neither party is to be favored in their construction. The well recognized rule of construing language of an insurance policy most strongly against the insurance company does not permit or cause the Court to create an ambiguity where none exists."

■ Again, the policy of the defendant specifically excluded coverage of liability arising from the loading or

unloading of motor vehicles, and we are of the opinion that the preponderance of the evidence shows that the operation here involved, was the loading of vehicles. In fact complainant's bill avers that the accident arose out of the loading of a motor vehicle and that such motor vehicle was a tank truck into which complainant's men were pumping cut-back asphalt from a railroad tank car.

Since the accident in question involved the loading of vehicles and did not occur on premises owned, rented or controlled by the insured, there was no coverage under the defendant's policy.

It results that the judgment of the Chancellor is affirmed.

Affirmed.

Felts and Hickerson, JJ., concur.