Waldo CLARK, Sinclair Refining Company, Zurich Insurance Company, Plaintiffs-Appellees,

v.

The TRAVELERS INDEMNITY COMPANY, The Rogers Cartage Company, Defendants-Appellants.

Nos. 13703, 13704.

United States Court of Appeals Seventh Circuit.

Jan. 3, 1963.

Rehearing Denied Feb. 25, 1963.

---

Hugh E. Reynolds, Jr., Indianapolis, Ind., Richard E. Mueller, Chicago, Ill., Lord, Bissell & Brook, Chicago, Ill., of counsel, for Travelers Ins. Co.

R. Stanley Lawton, George B. Gavit, Indianapolis, Ind., Ross, McCord, Ice & Miller, Indianapolis, Ind., of counsel, for appellees.

Before SCHNACKENBERG, CASTLE and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Sinclair Refining Company (Sinclair), its employee, Waldo Clark, and its insurer, Zurich Insurance Company (Zurich), plaintiffs, brought this action against The Travelers Indemnity Company (Travelers) and its insured, The Rogers Cartage Company (Rogers), for a declaratory judgment and for damages based upon a Comprehensive Automobile Liability Policy issued by Travelers to Rogers. The case was tried to the Court without a jury, largely upon documentary evidence. The Court made findings of fact, entered its conclusions of law and a judgment predicated thereon in favor of Zurich and against Travelers. From this judgment defendants appeal.

The occurrence constituting the basis for the controversy was an explosion which took place on January 16, 1957, about 5:30 p. m., at Sinclair's bulk petroleum products terminal at Clermont, Indiana, causing bodily injuries to two truck drivers and extensive property damage. Numerous actions were commenced against Sinclair because of its alleged negligence in connection with the explosion. Some of these actions culminated in judgments against Sinclair which were paid by Zurich, its insurer. At the time of the trial in the instant case, other actions for damages were pending against Sinclair. The judgment against Travelers is in favor of Zurich for the total amount it had paid as the insurer of Sinclair. The judgment also declared that Travelers was obligated to defend Sinclair in certain enumerated actions then pending; to pay all judgments rendered against Sinclair within the amount of the limits of coverage of Travelers' policy; to defend any other actions which might be brought against Sinclair and Clark for damages growing out of the occurrence, and to pay any judgments rendered against them.

The Comprehensive Automobile Liability Policy issued by Travelers to Rogers obligated Travelers, subject to certain exclusions and conditions named in the policy "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * or destruction of property, * * * caused by accident and *arising out of the* * * * *use of any automobile.*" (Italics ours.) The policy also provided:

> "Definition of Insured. The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile * * * and any person or organization legally responsible for the use thereof; provided the actual use of the automobile is by the named insured or with his permission. * * *

> "Purposes of use defined. (c) use of an automobile includes the loading and unloading thereof."

The primary contested issue is whether the District Court erred in holding that Sinclair, an unnamed insured, was covered by Travelers for damages resulting from Sinclair's negligence because of an occurrence arising out of the use of an automobile (truck) owned by Rogers. Other contested issues, all decided against Travelers, arising in the main from certain exclusionary clauses

162

contained in the policy, will need consideration only if the holding of the District Court on the primary issue is sustained.

A solution of the primary issue is dependent upon the interpretation or construction of the policy issued by Travelers to Rogers, and particularly of the so-called "loading" provision as applied to the facts of the case.

The situation, so we think, requires a rather detailed statement of the facts even though there is little dispute as to the evidentiary proof. Certain findings of the Court which defendants contend are clearly erroneous will be subsequently noted.

Sinclair's bulk petroleum plant contains a 90-foot loading dock which stands approximately ten feet from the ground and contains a shack at the center. At the time of the occurrence the temperature was 3 degrees above zero and the loading area had been partially covered with ice and snow for four days. About 5:15 p. m., a Rogers tractor-trailer unit designed to carry petroleum products, operated by Winfred Saylor, an employee of Rogers, entered the terminal and was spotted at the loading dock by Clark, the only loader on duty, who attached the grounding wire to the Rogers vehicle. Clark, after determining from Saylor the type and quantity of gasoline, commenced filling the first of the three compartments in the trailer. The Sinclair loading equipment included an automatic metering device which was designed to shut off the flow of gasoline when a pre-set quantity had been discharged.

Clark, after filling the first compartment, placed the loading nozzle in the second compartment, re-set the automatic metering device and went to the shack to do necessary paper work in connection with the operation. While there he noticed that gasoline was spilling out of the side of the Rogers vehicle and cut off the flow with a manual control. Approximately 50 to 60 gallons of gasoline were spilled on the ground, where it remained.

The procedure followed by Sinclair provided for washing any spilled gasoline down a drain with a hose; however, on this occasion the drains were completely clogged with ice and snow and had been for some four days. Because of such conditions Clark could not and did not attempt to clean up the spilled gasoline. About this time a tractor-trailer unit owned and operated by Petroleum Haulers, Inc., driven by one Claude Adair, entered the loading dock area. This unit was also spotted at the rack by Clark who placed it on the opposite side, about ten feet from the Rogers vehicle. Clark set the grounding wire, ascertained the amount of gasoline and commenced the loading of this vehicle with a different nozzle and automatic metering device. Thereafter, Clark commenced loading the third compartment of the Rogers vehicle with a manual cut-off device and was doing this at the time of the explosion. The engines of both the Rogers and Petroleum vehicles were turned off at the time of their arrival. The filling of the Rogers vehicle commenced about five minutes after its arrival. About ten minutes after the spill and the arrival of the Petroleum vehicle, a Sinclair owned and operated tractor-trailer unit (insured by Zurich) was driven up to the loading rack by Francis Albertson, a Sinclair employee. Almost immediately thereafter, an explosion occurred.

We now turn to a consideration of the Court's findings, keeping in mind the universal rule that they will not be set aside unless clearly erroneous and that any reasonable inferences drawn by the Trial Court will not be rejected. First, we shall state in summarized form the findings concerning which there is no dispute. The Court found that Sinclair and its employees were negligent in (1) furnishing faulty automatic loading equipment, (2) using the faulty equipment when an alternative loading device was available and (3) failing to remove the ice and snow accumulations which prevented drainage of the spilled gasoline.

The findings which defendants attack as clearly erroneous are (1) that the explosion was proximately caused by Clark "proceeding with the loading of the third compartment" of the Rogers vehicle and (2) that the use of Sinclair's truck, insured by Zurich and driven by Francis Albertson, was "not a proximate contributing cause to the occurrence and the resulting damages." We think that the finding (1) just above is without any evidentiary basis, by inference or otherwise, and must be rejected. It is true, of course, that Clark was so engaged at the time of the explosion. He was using a manual cut-off device and there is no evidence or contention that he proceeded in other than a proper and prudent manner. Gasoline had previously been spilled and it was the ignition of fumes arising therefrom which caused the explosion. The act of Clark in proceeding as he did neither added to nor detracted from the pre-existing dangerous situation.

The finding which exonerates the use of Sinclair's truck as a proximate contributing cause of the occurrence is entitled to serious consideration, and we have given it much thought. Both sides attach much importance to this finding as it relates to their respective positions, more so perhaps than the situation requires.

The Sinclair vehicle approached the scene of the occurrence about ten minutes after the gasoline had been spilled and was stopped a foot to a foot and a half from the rear of the Rogers vehicle. Albertson saw no evidence of fire until he stepped out of his cab, and saw a fire on the ground between the front of his truck and the rear of the Rogers vehicle. Almost immediately thereafter the explosion occurred. The undisputed evidence shows that there was no clinking of metal, no smoking or matches, no unusual noises or sounds, before or at the time the fire started. The only evidence of any movement of any kind, or any change of conditions immediately prior to the explosion, was the parking by Albertson immediately behind the Rogers truck, in the area where the gasoline had spilled.

Defendants offered as a witness an automotive engineering expert whose qualifications are not in question. A reading of his testimony reveals that the opinions expressed by him are entitled to considerable weight. In response to a hypothetical question incorporating the material facts, the expert testified that in his opinion the movement of Sinclair into the vicinity of Rogers caused the ignition of the gasoline. He related several matters in connection with the operation of the Sinclair vehicle which could have caused the ignition. He pointed out that the ignition point of gasoline vapor is 500 degrees Fahrenheit, and that an exhaust manifold or a spark from the electrical system of an automobile, which could be caused by any of several circumstances, would account for the ignition of gasoline fumes. He testified that considering the length of time the Petroleum and Rogers vehicles had been in the area with their engines shut off, their manifolds would not have been sufficiently hot to ignite the fumes at the time of the explosion, and, further, that the grounding of the Rogers and Petroleum vehicles virtually eliminated the possibility of a static spark from them. The witness testified on cross-examination that absent the third truck, he had no opinion as to the cause of the explosion.

At the time of the explosion, the drivers for Rogers and Petroleum were in the shack. Clark was the only person on the dock and testified that the gasoline had been on the ground for ten minutes, during which time it did not ignite and nothing occurred on the dock in connection with these two vehicles or the three men which would explain the cause of the ignition which took place almost simultaneously with the arrival of the Sinclair truck. Certainly the ignition resulted from some object or the act of some person on the premises at that time. There is no basis for a reasonable inference that it resulted from

any act of persons other than Albertson or from any object other than the truck driven by him.

The Court found:

"* * * the specific origin of the cause of the igniting of such gasoline and explosion cannot be ascertained from the known facts except that the fumes and gasoline so spilled were ignited."

In our judgment, the circumstances raise an inescapable inference that the use of Sinclair's truck, driven by Albertson, was a proximate contributing cause of the occurrence, and the finding of the Court to the contrary is clearly erroneous.

 The issue for decision is whether the policy furnished coverage to Sinclair under the facts of the case. In this connection, some recognized principles of law should be noted. The home office of Travelers, as well as of Rogers, was in Illinois. The policy was negotiated, executed, delivered and the premiums paid in Illinois. It is hardly open to question but that the construction of the policy and the rights of the parties thereunder must be determined by the law of that state. Cross et al. v. Zurich General Accident & Liability Ins. Co., 7 Cir., 184 F.2d 609, 611; Scarpelli v. The Travelers Indemnity Co. of Hartford, 7 Cir., 248 F.2d 791, 793. The omnibus clause in the "standard" automobile policy, such as the one contained in the instant suit, is a provision required by statute (Ch. 95½, Sec. 42–11, par. 58k Ill.Rev.Stat.1955). In such situations, the general rule that ambiguous provisions of an insurance contract are to be construed against the insurer are without application. Midwest Triangle Paint Works, Inc. v. Firemen's Insurance Co., 36 Ill.App.2d 65, 69, 183 N.E.2d 562; Gallopin v. Continental Cas. Co., 290 Ill.App. 8, 7 N.E.2d 771.

 The Illinois case upon which Travelers places much reliance is that of General Accident Fire and Life Assurance Corp. v. Brown, decided by an Illinois Appellate Court (First District) March 12, 1962. (35 Ill.App.2d 43, 181 N.E.2d 191.) The District Court did not have the benefit of this decision as it was rendered almost three months after the judgment in the instant case. In Brown, the material provisions of the policy were almost identical with those of the policy in the instant case. There is, of course, some difference in the facts but, even so, the question for decision was the same as that here. The Court, after reviewing the facts, stated (181 N.E.2d page 194):

"* * * Thus, unless we can determine that the loading of the truck was the efficient and predominating cause of Blakesley's injury, the matter will not come within the terms of Employers' automobile policy.

"On the record before us we cannot say that Blakesley's injury was caused by the loading of the truck. In his suit Blakesley alleged that his injury was caused solely by Libby's defective dock and their negligence in failing to maintain it. Libby owned and controlled the dock and clearly had sole responsibility for its maintenance. There were no allegations to the effect that Blakesley's carrying of merchandise in any way contributed to his fall, nor that any merchandise or anything connected with the loading operation or the truck itself in any way caused his injury. We are satisfied that the accident was not the result of the loading or use of the truck, but rather was caused directly by some independent factor or intervening cause wholly disassociated with and remote from the use of the truck. The coverage provided under the loading and unloading clause of Employers' policy could not have been intended to apply to such a situation."

In the case before us, the explosion was caused by factors for which Sinclair had the sole responsibility, factors "wholly disassociated with and remote from" the use of Rogers' truck. Conse-

quently, the loading of the Rogers unit was not the efficient and predominating cause of the explosion.

An annotation at 160 A.L.R. 1259, 1272, states:

"According to all the cases discussing this question, the general rule seems to be that an accident is covered by the 'loading and unloading' clause only if the loading or unloading was the efficient and predominating cause of the accident."

American Jurisprudence 5A, Sec. 77 (Automobile Insurance), after a statement that the accident must be causally connected with the process of loading, states:

"An accident is causally connected with the process of loading or unloading within the meaning of the clause only if the loading or unloading was the efficient and predominating cause of the accident."

This "efficient and predominating cause" rule is, we think, an allowable construction of the policy. There is no contention and no basis for an inference that either Rogers' truck or its driver contributed in any manner or form to the explosion. The most that can be said is that its truck happened to be on Sinclair's premises at the time of the occurrence. The policy furnishes coverage to the unnamed insured only if during a loading operation an accident arises out of the use of the insured vehicle. It would require a strained construction of this language to make it applicable to Rogers merely because of the presence of its truck during the loading operation. It is far more reasonable to conclude that the explosion occurred during the loading operation than that it arose out of the operation.

A discussion of the numerous cases cited by the parties in support of their respective positions would unduly prolong this opinion. Most are from other jurisdictions and in the main deal with questions other than the coverage afforded an unnamed insured under an omnibus policy. Moreover, there is no case of which we are aware which is so nearly analogous on the facts and which announces a rule of law in such unmistakable terms as the recent decision of the Illinois Appellate Court in Brown.

However, we shall cite the three cases most strongly relied upon by Sinclair in support of its argument that it is covered by the terms of the policy. Red Ball Motor Freight, Inc. v. Employers Mut. Liability Ins. Co., 5th Cir. 1951, 189 F.2d 374; Bituminous Casualty Corp. v. American Fidelity and Casualty Co., Inc., 22 Ill.App.2d 26, 159 N.E.2d 7; Coulter v. American Employers' Ins. Co. (1948), 333 Ill.App. 631, 78 N.E.2d 131. The Red Ball case turned largely on what constituted a "use" of the motor vehicle in question. There was no question of the negligent maintenance of the additional insured's premises, for which responsibility was sought to be imposed on the named insurer. Moreover and more important insofar as the instant case is concerned, the decision in that case was controlled by decisions of the State Courts of Texas. The decision in Bituminous was by the same court which later decided Brown without mentioning its former decision. It was contended that the additional insured was not protected from negligence in maintaining its own premises. There was no issue, as there is here, concerning a causal connection between the negligence and the loading operation. Coulter is similarly distinguishable. There, an employee of the named insured was negligent in connection with the operation of the insured truck. The question was whether the act of the employee responsible for the occurrence arose from the loading operation of the truck. There was no question such as is involved here and as faced the court in Brown, as to whether the loading of the insured vehicle was the efficient and predominating cause of the occurrence.

Travelers devotes much of its argument to the intention of the contracting parties relative to the coverage and exclusions contained in the insurance con-

tract. The Comprehensive Automobile Liability Policy directly involved was issued by Travelers in connection with a Workmen's Compensation and Employers' Liability and a Comprehensive General Liability policy. These policies together are characterized as a Retrospective Rating Plan, which provided for what might be described in short as a rating plan for the payment of premiums. Oral testimony was heard as to the intention of Travelers and Rogers as to the coverage afforded. This testimony was heard presumably on the theory that the terms of the contracts, and particularly the one relied on in this case, were ambiguous. This is a sound presumption in view of the difficulties which numerous courts have had in interpreting and giving effect to insurance contracts of similar vein. We think it unnecessary to discuss this oral testimony as it relates to intent. In addition to what we have previously stated, there are two incongruous aspects of the interpretation placed upon the policy by the Court which, in our view, could not reasonably have been comprehended or anticipated.

(1) Under the terms of the policy Rogers, the named insured who paid the premiums, is in effect a self-insurer of any liability which it may incur up to $10,000. To that extent Rogers was without protection. In contrast, Sinclair, an unnamed insured who paid no premiums, claimed protection in full for all liability which flowed from its own negligence. This liability was discharged by Zurich, its insurer, and as we understand is included in the judgment against Travelers. This means that Sinclair was afforded greater protection on a free ride than Rogers who was paying the freight.

(2) The policy contains certain exclusionary clauses which under designated circumstances relieve Travelers of liability to Rogers, its named insured. Sinclair claims and has been awarded protection as an unnamed insured because of the definition of "insured" contained in the policy. When it comes to the exclusionary clauses, however, it contends and the Court agreed that they are not applicable to it as an unnamed insured. In short, it claims and is afforded coverage because of the policy definition of "insured," but rejects such definition as not applicable to the exclusionary clauses. The Court agreed with this interpretation and, as a result, the judgment is substantially larger than it otherwise would have been.

We mention these exclusionary clauses only in connection with what we think is Sinclair's inconsistent position, which it is enabled to take because of the ambiguous and uncertain provisions of the policy.

As shown, there is no proof that the loading of the Rogers vehicle was the efficient and predominating cause of the explosion which resulted in damages for which Sinclair has been held responsible. Under the decision of the Illinois Appellate Court in Brown (35 Ill.App.2d 43, 181 N.E.2d 191), absent such proof there is no liability on the part of Rogers or Travelers, its insurer. The decision in Brown is by the highest Illinois Court to have considered the issue and we think it cannot be ignored. Moreover, if it were a matter of first impression, we would reach the same result.

There are numerous other issues, all of which relate to items included in and made a part of the judgment, which, in view of our holding, there is no occasion to consider. This includes the issue raised by Sinclair on cross-appeal relative to the amount of interest which was allowed on the judgment.

The judgment is
Reversed.