**William SCHMIDT, Plaintiff-Appellee,**

v.

**Andrew LIESENFELT, Defendant-Appellant.**

**No. 15999.**

United States Court of Appeals
Seventh Circuit.

June 16, 1967.

Edmond J. Leeney, Patrick J. Galvin, Hammond, Ind., for appellant.

Owen W. Crumpacker, Harold Abrahamson, Kenneth D. Reed, Hammond, Ind., for appellee.

Before MAJOR, Senior Circuit Judge, and CASTLE and FAIRCHILD, Circuit Judges.

MAJOR, Senior Circuit Judge.

This diversity action was commenced for the recovery of damages occasioned by the alleged negligence of defendant in the operation of his automobile. The case was tried before Judge Jesse E. Eschbach without a jury. In a rather lengthy memorandum opinion which contained findings of fact and conclusions of law, the Court found the issues in favor of plaintiff and, on September 14, 1966, entered judgment against defendant, from which this appeal comes.

The contested issues as stated by defendant are that the Court erred (1) in failing to apply the applicable Indiana law to the facts of the case and (2) in making specific findings which were not supported by the evidence.

Plaintiff was a passenger in the front seat of a Valiant automobile driven by Raymond Pascoe which collided with a Ford automobile operated by defendant. The collision occurred at a junction formed by public roadways known as Calumet Avenue, River Drive and the southbound exit ramp of the Tri-State Expressway.

At the situs in question the Tri-State Expressway is an east-west highway constructed at grade level; Calumet Avenue

is a 4-lane north-south highway bridged over the Expressway; River Drive is a 2-lane east-west road which runs generally parallel with the Expressway and in close proximity thereto. There is a single lane exit ramp for eastbound traffic on the Expressway for those desiring to proceed south on Calumet. Thus, traffic on the exit ramp merges into the southbound traffic on Calumet Avenue. River Drive intersects Calumet Avenue at a right angle some 25 feet south of the point where the exit ramp merges with the southbound traffic on Calumet.

On the day of the occurrence, Pascoe (driver of the Valiant in which plaintiff was a passenger) drove east on the Expressway and turned to his right on the ramp for the purpose of proceeding south on Calumet. On his right as he approached the point of merger was a "Yield" sign. Defendant drove north on Calumet until he reached River Drive, where he turned left and proceeded west thereon. At the intersection of River Drive and the outer lane of Calumet the cars collided, and plaintiff sustained the injuries of which he complains.

We discern no reason to disagree with plaintiff's statement on brief, "The issue in this case is which of these two cars, the Pascoe car or the Liesenfelt car, had the right-of-way. One of them had the right-of-way and the other one didn't." Defendant's main contention that he had the right-of-way is bottomed on the premise that Pascoe failed to obey the "Yield" sign, as required by Ind.Ann. Stat. Sec. 47–2028 (Burns' Replacement 1965). This section contains a proviso, "That if such driver is involved in a collision with * * * a vehicle in the intersection after driving past a yield sign without stopping, such collision shall be deemed *prima facie* evidence of his failure to yield right-of-way."

The Trial Court in its memorandum did not specifically mention this statutory provision, but it is a *non sequitur* to argue, as defendant does, that the Court ignored it. It inherently follows from the Court's findings and conclusion that it took into consideration all relevant law and evidence in finding in effect that any negligence on the part of Pascoe was not "the sole proximate cause of the collision" and "Mr. Liesenfelt was negligent, and his negligence was a proximate cause of the collision and the injuries suffered by the plaintiff." Undoubtedly the "Yield" sign was directed at the traffic from the ramp merging with that on Calumet Avenue, but we think it is a dubious argument that it was also directed at the traffic on Calumet as it intersected River Drive. While defendant testified that he saw the "Yield" sign and that Pascoe did not stop as he merged into Calumet, he did not testify that he relied upon such sign as giving him the right-of-way. In any event, the evidence, viewed in the light most favorable to the prevailing party, shows substantial compliance. Pascoe testified, "I slowed down because of the heavy onrush of traffic from the north and kept looking to the rear to the best of my ability. I look back over my left shoulder. I cannot honestly say if I ever brought my car to a complete halt. I would say it was either a stop, or two to three miles an hour."

A statutory provision more pertinent to the instant situation is Burns' Ind. Stats., Sec. 47–2023, which provides in part:

"A signal of intention to turn right or left shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."

It may be noted that the Court also did not specifically mention this statutory provision but evidently had it in mind. The Court found that the defendant made a "left turn immediately in front of the Pascoe vehicle" and "he failed to observe the vehicle in which plaintiff was a passenger. At this point there was nothing which would have alerted Mr. Pascoe or any of the passengers in his vehicle that a northbound vehicle on Calumet Avenue would make a left turn."

Defendant argues there is no basis for the finding or inference that he failed to comply with the left-turn signal in the face of his positive testimony that he did so. This argument overlooks the testimony of Pascoe who stated that the defendant "made a sharp left-hand turn directly in front of me with no warning signal. * * * I know he gave no indication of turning because I was watching."

More important perhaps was the testimony of Mrs. Marian Wissenberg, the only disinterested occurrence witness, who was traveling north on Calumet almost immediately behind defendant's car. Although in a position to see, she saw no left-turn signal. She stated, "The Ford moved quickly. By quickly I mean I thought he would have been hit in the inside lane. There was so much traffic coming. I was surprised that he got that far. Yes, he moved quickly. He got through a line of traffic that was coming south there and into the next lane, and I was surprised no accident had happened immediately." At another point she stated, "I felt his turn was unreasonable. * * * It would not necessarily be as dangerous for one to come off that expressway onto Calumet as one making a left-hand turn."

■■ We think we need not further pursue defendant's argument that the Court's findings are not sufficiently supported by the evidence. In any event, the evidentiary findings are sufficiently supported to justify the ultimate finding that defendant's negligence was the proximate cause of the collision. It is hardly necessary to cite cases for the universal rule that findings of the Trial Court will not be set aside unless clearly erroneous. See Clark v. Travelers Indemnity Co., 7 Cir., 313 F.2d 160, 162; Carter Oil Co. v. McQuigg et al., 7 Cir., 112 F.2d 275, 279.

■■ Defendant also argues that the Court erred in its failure to find plaintiff guilty of contributory negligence. This is an affirmative defense, with the burden of proof on the defendant. Ka-

minski v. Meadows, 7 Cir., 264 F.2d 53, 57. After reviewing the evidence and the Indiana law pertaining to a guest passenger, the Trial Court found that plaintiff exercised "the same standard of care which would be exercised by an ordinarily prudent passenger under the same circumstances." Moreover, as previously shown, the Court expressly found that defendant's negligence "was a proximate cause of the collision and the injuries sustained by the plaintiff." We discern no reason to think that the Court's finding and conclusion on this phase of the case was improper. Certainly there is no basis for holding that its finding was clearly erroneous.

We have carefully reviewed the record, including a reading of the testimony, and find no reason to reverse the judgment. It is, therefore,

Affirmed.