ROBERT S. DAVIS, d/b/a Davis Hybrid Corn Company, Plaintiff, *v.* JOHN SHEEHAN *et al.*, Defendants.—(JOHN SHEEHAN *et al.*, Third-Party Plaintiffs-Appellees, *v.* OHIO CASUALTY INSURANCE COMPANY *et al.*, Third-Party Defendants-Appellants.)

Fourth District   No. 13396

Opinion filed November 18, 1976.

450

CRAVEN, P. J., concurring in part and dissenting in part.

Sebat, Swanson, Banks, Lessen & Garman, of Danville (Ralph J. Swanson, of counsel), for appellant Ohio Casualty Insurance Company.

Acton, Acton, Meyer & Smith, of Danville (Thomas R. Smith, of counsel), for appellant National Ben Franklin Insurance Company.

H. Ivan Sadler, of Danville, for appellee Robert S. Davis.

Young, Welsch, Young & Hall, of Danville (E. Daniel Welsch, of counsel), for appellees John and Susan Sheehan.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiff Robert S. Davis, d/b/a Davis Hybrid Corn Company, brought suit in the Circuit Court of Vermilion County against defendants John Sheehan, Susan Sheehan, Henry Szilagyi, Wayne Livingston, George Hull, and George Lucas. The complaint alleged that the Sheehans, by their servants Livingston, Hull and Lucas, on or about November 11, 1971, negligently dumped some field corn in a storage bin leased to plaintiff by the Commodity Credit Corporation (C.C.C.). The complaint stated that on that date plaintiff was storing some certified seed corn in this bin and that the resultant commingling rendered the seed corn worthless. The

Sheehans, as part of their answer, filed a "cross-complaint" against Ohio Casualty Insurance Co. (Ohio), National Ben Franklin Insurance Co. of Illinois (Ben Franklin), and Kenilworth Insurance Co. (Kenilworth) alleging that each of these insurance companies were responsible under respective insurance policies to defend the Sheehans and their three employees and that each insurance company had to some extent refused to do so. The Sheehans requested that the court declare the rights of the parties in the three insurance policies.

After issue was drawn upon the "cross-complaint," a bench trial was held, at which time the court heard evidence mostly concerning the occurrence giving rise to the original suit. The court ruled that the policies of the three insurance companies each offered coverage to the Sheehans and their three employees and that there was no reason to delay appeal of the order. Ohio and Franklin appeal.

The evidence showed that the defendants John and Susan Sheehan, husband and wife, were engaged in farming. On November 11, 1971, John Sheehan, assisted by his three employees, was harvesting corn and storing it in five storage bins which he rented from C.C.C. at the same site as the bins rented by plaintiff, Davis. The bins were some four miles west of where Sheehan was farming. The corn was being transported from the field to the bins in a dump truck loaned to Sheehan by Szilagyi and a wagon pulled by a pickup truck, both owned by Sheehan. The dump truck was insured by an Ohio liability policy with Szilagyi as the named insured and the pickup truck was covered by a Kenilworth policy with the Sheehans as the named insureds. Sheehans also had a general farm owners policy with Ben Franklin.

Livingston alternately drove the dump truck and the pickup truck from the field to the storage bin and back. While he drove one conveyance to the storage bin and unloaded it, the other was left at the field to be filled. Corn was put in the dump truck and the wagon, none was put in the bed of the pickup truck. At the storage bin an auger powered by a takeoff from a tractor was used to transfer the corn from the vehicle to the bin. The corn was dumped from the vehicle into the hopper of the auger and then conveyed by the auger into the bin.

Toward the end of the day on November 11, 1971, the bin then being filled became full. Livingston returned to the farm for further instruction. Sheehan told him to move the auger two bins to the north and start filling that bin. Sheehan also told Livingston that he could get Hull to help him. Livingston and Hull were able to move the auger only a short distance from the bin and went back to the farm and got Lucas, who was crushing cornstalks, to help them. With Lucas' help, they were able to move the auger. They moved it, however, to Davis' bin. The evidence is uncertain as to how they made the mistake. They did not move it two bins to the

north of where it had been. Apparently they became confused as to which bin they had been filling. The bins were numbered but Sheehan did not tell Livingston the number of the bin to which the auger was to be moved. As the auger was placed at the Davis bin, Livingston was on the top of the bin guiding the spout of the auger into place over the opening of the bin. Darkness had set in and Livingston could not see into the bin to determine if it had corn in it. No attempt was made to find out if the bin was empty. A load of corn in the dump truck was then dumped into the auger and conveyed into the bin, whereupon work stopped for the night. Several loads from both dump truck and wagon were similarly dumped the next day before it was determined that the wrong bin was being used.

■■ The section of the Ben Franklin policy providing for liability coverage, section II, excludes from coverage the "loading or unloading of automobiles or midget automobiles while away from the *premises* or the ways immediately adjoining * * *." (Emphasis added.) Ben Franklin contends that the trial court improperly imposed coverage upon it because the damage to the seed corn arose out of the unloading of automobiles away from the "premises." The policy defines the word "premises" as follows:

> "(c) 'premises' for purposes of Section II, the definition of 'premises' appearing in the Basic Policy shall include: (1) all premises which the Named Insured or his spouse owns, rents or operates as a farm or maintains as a residence and includes private approaches thereto and other premises and private approaches thereto for use in connection with said farm or residence, except business property."

Citing *Sam Findley, Inc. v. Standard Accident Insurance Co.* (1956), 41 Tenn. App. 417, 295 S.W.2d 819, and *Heinrich v. Globe Indemnity Co.* (1964), 276 Ala. 518, 164 So. 2d 709, Ben Franklin argues that the place of the unloading here was not on the "premises" within the policy meaning because Sheehans did not control the area at the bins. The liability policies construed in those cases, however, expressly required that an area be owned, leased or controlled by the insured to qualify as premises. The policy here makes no such requirement. The right to use the area and to store in the bins granted by C.C.C. to the Sheehans together with the use actually made of the area by the Sheehans qualified the area as "other premises and private approaches thereto for use in connection with such farm." Accordingly, the unloading did not occur "away from the premises" and did not exclude coverage by Ben Franklin.

The Ohio policy designated those who used the dump truck with the named insured's permission as additional insureds. Ohio concedes that the Sheehans and their employees had that permission. The policy stated that the covered uses included the loading and unloading of the truck. Ohio's

coverage, if any, arises from the "loading and unloading clause." Ohio contends that for this clause to impose coverage upon it, the loading or unloading of the truck must be the "efficient and predominating cause" of the injury for which the insured is charged with liability. Here the original complaint alleged that the Sheehans, through their employees negligently dumped field corn into plaintiff's bin and negligently did so without inspecting the bin. The evidence showed that the Sheehans' employees placed the auger with the shoot in Davis' bin and then dumped several loads of corn into the auger which conveyed the corn into the bin. Ohio maintains that unloading was not the "efficient and predominating cause" because that cause was either John Sheehan's negligence in not properly instructing Livingston as to the location of the bin to which the auger should be moved, the placement of the auger as distinguished from the dumping of the grain or the conveyance by the auger of the corn into the bin. A decision of the appellate court for the First District and two decisions of the United States Court of Appeals for the Seventh Circuit ruling on Illinois substantive law have applied the "efficient and predominating cause" rule.

In *General Accident Fire & Life Assurance Corp. v. Brown* (1962), 35 Ill. App. 2d 43, 49, 181 N.E.2d 191, 194, Brown had agreed to haul merchandise for Libby Furniture and Appliance Co. Two Brown employees drove up to a Libby loading dock to pick up goods to deliver to Libby customers. While carrying goods to the truck one Brown employee fell and injured himself. He sued Libby, contending that Libby had negligently maintained the dock. Libby and its general insurance carrier then sued Brown and its auto liability carrier, requesting a declaration that Libby was an additional insured under Brown's auto liability policy and that a "loading and unloading" clause of that policy, similar to the clause in the Ohio policy here, gave coverage to Libby for the occurrence. The court stated that in order for coverage to exist, the loading of the truck must have been "the efficient and predominating cause" of the injury. The court noted that the personal injury suit alleged that the injury resulted from Libby's negligence in maintenance of the loading dock which it owned and exclusively controlled. After further mentioning that the complaint failed to allege that the truck, the merchandise or anybody connected with the unloading caused the injury, the court held that the unloading did not cause the injury and that, in any event, an exclusion in the policy prevented Libby from being an additional insured. The court affirmed the trial court's denial of coverage.

In *Clark v. Travelers Indemnity Co.* (7th Cir. 1963), 313 F.2d 160, 164, a truck belonging to Rogers pulled up to a Sinclair loading dock to be filled with gasoline. In filling the tank, a Sinclair employee, Clark, spilled considerable gasoline on the pavement. Soon, thereafter, a Sinclair truck

pulled up and an explosion took place. Clark sued Sinclair for injuries, and subsequently an action was brought to determine if Rogers' insurer had coverage under a similar loading and unloading clause of Rogers' auto liability policy. The reviewing court stated that although the explosion occurred while the Rogers' truck was present during the loading operation, the loading was not the "efficient and predominating cause" because neither the truck nor its driver "contributed in any manner or form to the explosion." Sinclair had the sole responsibility for the spilling of the gasoline and not cleaning it up. The subsequent arrival of a Sinclair truck concurred with the explosion.

In *Bituminous Casualty Corp. v. Hartford Accident & Indemnity Co.* (7th Cir. 1964), 330 F.2d 96, William H. Edwards sold chemical commercial fertilizer from a storage facility. An auger was placed in the floor of a building at the facility and was conveying fertilizer out of the building and into the truck of a customer, Bohm. A visitor came into the building and was injured when his leg was caught in the auger. He sued Edwards for negligence and subsequent proceedings were held to determine whether Bohm's auto liability carrier had any coverage under the loading-unloading clause of its policy. Citing *Brown* and *Clark*, the court noted that as in *Clark* neither the owner nor driver of the truck in any way contributed to the injury. The auger was under the complete control of Edwards and his employees. The court ruled that the loading was not the "efficient and predominating cause" of the occurrence and held that the Bohm policy gave no coverage.

■■ The opinions in each of these three cases emphasize that the entity in possession, operation and control of the insured vehicle, neither through its driver nor other employee, had been charged with or shown to be guilty of any negligence causing the damage involved. Largely for this reason, the loading or unloading was held not to be the "efficient and predominating cause." This was so even though in two of the cases the injury took place while loading or unloading was in progress. On the other hand, in the instant case the sole charges of negligence are directed against the driver and other employees of the persons having custody and control of and operating the insured vehicle. Unlike the situation in *Bituminous Casualty Corp. v. Hartford Accident Indemnity Co.*, the auger was in the possession, operation and control of the same entity as the insured vehicle.

Thus, although the opinion in each case stated that the "efficient and predominating cause" rule was being applied, the facts of these cases present no analogy to be drawn to the instant case.

In support of its contention that John Sheehan's negligence in not properly instructing Livingston was the "efficient and predominating cause" of the injury here, preventing coverage under the dump truck

liability policy, Ohio cites *Gamble-Skogmo, Inc. v. St. Paul Mercury Indemnity Co.* (1954), 242 Minn. 91, 64 N.W.2d 380. There a farm implement was shipped by a seller to a purchaser on a truck owned by the seller's salesman, under an agreement that the implement would be assembled at the farm. While the implement was being assembled on the bed of the truck parked at the farm but before the implement was unloaded, an individual was hit by a part of the implement and sued the seller, claiming the seller was negligent in not properly instructing the inexperienced person sent to assemble the implement. In ruling on review upon a subsequent suit seeking to impose coverage upon the auto liability carrier of the owner of the truck used for delivery, the court held that the negligence of the seller in failing to properly instruct took place at a time and place too remote from the injury to be part of the unloading and denied coverage.

Here, unlike in *Gamble-Skogmo*, John Sheehan was not charged with failure to properly instruct. Rather liability was sought to be placed upon him because of the negligence of his employees in their activities at the bin. Sheehan did not designate the new bin to be used by number and he did know of Livingston's lack of experience and that he had some limitation. Whether he was negligent would, if properly raised, be a question of fact. If he was negligent, however, that would not prevent Livingston, Hull or Lucas from being liable if they were found to be negligent nor would it prevent either of the Sheehans from being held liable vicariously for the acts of their servants. A rule that we apply here would be equally applicable if there were no possibility of other insurance. If the Sheehans' employees at the bin were engaged in unloading, and their acts in unloading were sufficient to impose on them tort liability, it would be illogical to deny them insurance coverage because a concurrent cause of the damage to the seed corn was more predominating (see Couch on Insurance §45.33 (2d ed. 1964)). The Supreme Court has not passed on the "efficient and predominating cause" rule. We do not apply it to reach the result requested by Ohio. When tort law recognizes multiple acts as giving rise to a separate tort liability for the same injury, a rule of contract law construing liability insurance policies with a more restrictive concept of causation, creates many problems.

More difficult to determine is whether the allegedly negligent conduct of the three employees at the bin had a sufficient causal relation to the unloading of the truck to impose coverage on Ohio. In *Heape v. Bituminous Casualty Co.* (1962), 36 Ill. App. 2d 131, 182 N.E.2d 918, Heape was an employee of United Electric Co. and was operating a bulldozer to push mats belonging to United Electric to a truck owned and operated by Keene Trucking Service when the bulldozer hit and injured

Huggins, a Keene employee who was loading the mats into the truck. Huggins sued Heape, who then brought action to obtain coverage under the loading-unloading clause of Keene's truck liability policy. The court affirmed a ruling that Heape had no coverage.

As in the three cases mentioning the "efficient and predominating cause" rule the opinion noted that Heape was not an employee of the insured. The court also stated:

> "The activities of Heape in pushing the mats into position were not part of the act of loading since the mats were put into position for the purpose of loading by others, and clearing the path for the truck, similarly, could not be construed as a part of the act of loading. We are not faced with the problem of determining whether pushing of the mats into position to be loaded, if this were in fact a part of and continuous act to be undertaken by Heape which would be culminated by the act of loading of the truck by Heape as a part of his activities, would constitute 'loading.' " 36 Ill. App. 2d 131, 136, 182 N.E.2d 918, 921.)

Here Livingston, Hull and Lucas, unlike Heape, were all employees of the Sheehans who, with permission of the owners, had custody and control of the insured truck and were operating it. Also unlike Heape, their mission was to prepare for the actual unloading by the placement of the auger and then to culminate their undertaking by dumping the grain into the bin through the auger. All of this was to take place within a short period of time. There was no division of their function as existed between Heape's function of moving the mats and the function of Keene employees in putting the mats on the truck. Even though Lucas left before the truck was dumped, he was a participant in the undertaking. All three were engaged in the unloading.

In support of the argument that they have no coverage because the unloading ended when the corn was placed in the hopper of the auger, Ohio relies principally on *Liberty Mutual Insurance Co. v. Hartford Accident & Indemnity Co.* (7th Cir. 1958), 251 F.2d 761, and *Pavlik v. St. Paul Mercury Insurance Co.* (7th Cir. 1961), 291 F.2d 124. In the first case a driver dumped paint cans at a city dump but in the place where rubbish was to be burned rather than, as he should, where the rubbish was to be buried. The "loading and unloading" clause on the truck's liability policy was held not to give coverage for a suit arising from injuries received when the paint cans became ignited and exploded 29 hours later. In the later case the washing of the dragline bucket used to unload a cement truck with a hose from the truck was held not to be a covered occurrence under the "loading and unloading" clause of the truck's liability policy.

■■ In *Coulter v. American Employers' Insurance Co.* (1948), 333 Ill. App. 631, 78 N.E.2d 131, the "loading and unloading" clause of an

automobile liability policy was held to give coverage to the driver of the insured vehicle, a garbage truck, when the driver, while carrying a container of garbage from a customer's building to the truck, negligently opened a trap door and injured a passerby. There the operator of the truck was conveying garbage in a container prior to putting it on the truck. Here the operator of the truck was conveying grain in an auger to its point of delivery after it left the truck. The movement of the grain from the bed of the truck to the bin took only a few minutes. We rule that the unloading was not completed prior to the entry of the grain into the bin.

We thus conclude that the trial court properly ruled that the Sheehans and their three employees were covered under the "loading and unloading" clause of the Ohio policy. It also correctly ruled that they were covered under the Ben Franklin policy. The judgment is affirmed.

Affirmed.

REARDON, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, concurring in part, dissenting in part:

I agree with all that is said in the majority opinion except that portion of the opinion relating to the coverage under the Ohio policy. The Ohio insurance policy afforded coverage under a "loading and unloading clause." The damage suffered in this case relates to the moving of the auger and its negligent placement and dumping of field corn into the seed corn bin. This was unrelated to the loading and unloading of the truck, and, therefore, unrelated to the coverage afforded under the loading and unloading clause of the policy. Upon the authority of *General Accident Fire & Life Assurance Corp. v. Brown* (1962), 35 Ill. App. 2d 43, 181 N.E.2d 191, and the two cited Federal cases, I would hold that there is no coverage under the Ohio policy.