INDUSTRIAL FIRE & CASUALTY INSURANCE CO., Plaintiff-Appellant, *v.* GRINNELL MUTUAL REINSURANCE CO. *et al.*, Defendants-Appellees.

Fifth District    No. 80-429

Opinion filed September 25, 1981.

Craig & Craig, of Mattoon (Stephen L. Corn and Wesley J. Coulson, of counsel), for appellant.

John E. Jacobsen and Mark J. Ballard, both of Campbell, Furnall, Moore & Jacobsen, P. C., of Mt. Vernon, for appellee Grinnell Mutual Reinsurance Co.

Amling & Beyers, of Pana, for appellee D. J. McDermith and Roger McDermith.

Carl W. Lee, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee Bode Trucking, Inc.

Dunham, Boman & Leskera, of East St. Louis, for appellees Shelby D. Null, Kathleen Null, Shelby Null, Jr., Dawn Null, and Charles Null.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Industrial Fire & Casualty Insurance Company, appeals from a declaratory judgment in the Circuit Court of Fayette County. The plaintiff sought a determination of liability coverage under a farmowners-ranchowners insurance policy it had issued to the defendant, Dr. D. J. McDermith. The court found that the policy covered an accident involving vehicles and cattle that occurred adjacent to the farm of McDermith's son, Roger. The court found that the coverage extended to both Dr. McDermith and Roger, although the primary coverage for Roger was found to be the responsibility of defendant, Grinnell Mutual Reinsurance Company. The other defendants herein were parties in the lawsuit arising from the accident. The plaintiff has appealed the judgment determining that its policy's liability provisions cover the accident and that this coverage extends to both Dr. McDermith and Roger McDermith.

Plaintiff issued the policy to Dr. McDermith on September 15, 1972, for a term of 3 years. The policy provided both liability and casualty coverage. Dr. McDermith raised cattle on the premises listed in the policy. In September 1974, he deleted the casualty coverage on his cattle from his policy with plaintiff and replaced it with like coverage from Shelbyville Mutual Insurance Company. Dr. McDermith retained his liability coverage with plaintiff.

Roger McDermith purchased his farm in 1974. He obtained a policy of casualty and liability insurance covering the farm from Shelbyville Mutual, which was reinsured by defendant, Grinnell Mutual. Although Dr. McDermith cosigned a note to assist in his son's purchase of the farm, Dr. McDermith did not take title to the farm, and it was not listed as an insured premises in his policy with plaintiff.

Prior to moving to his own farm early in 1975, Roger McDermith kept cattle owned by him on his father's farm. Several of Roger's cows were bred to bulls owned by his father. They had agreed that they would each receive half of the calves at the time the calves were weaned.

Several calves remained unweaned when the cows and calves were moved to Roger's farm. He assumed possession and control of the animals. However, Dr. McDermith went to Roger's farm periodically to see that Roger was looking after the cattle properly. Dr. McDermith assisted his son with fencing and other work on Roger's farm.

On July 4, 1975, a vehicular collision occurred on a road adjacent to Roger's farm. In a lawsuit arising from this occurrence, it was alleged that a proximate cause of the collision was the presence on the highway of a cow and two calves from Roger McDermith's farm.

Roger and Dr. McDermith made claims for their casualty losses through Shelbyville Mutual. Roger received compensation for the cow and his interest in the calves killed in the collision. Dr. McDermith was compensated for his interest in the calves.

Plaintiff contends that Roger was not an "insured" within the meaning of that term as defined in the policy. The policy section in dispute provided as follows:

"When used in this policy the following definitions apply:

　　a. 'insured' means

* * *

(3) Under Coverage G-Personal Liability and Coverage H Medical Payments to Others:

(a) with respect to animals or watercraft to which this insurance applies, owned by any Insured, any person or organization legally responsible therefor, except a person or organization using or having custody or possession of any such animal or watercraft in the

course of his business or without permission of the owner * * *."

Under this provision, liability coverage is extended to a person who is legally responsible for animals to which the policy applies and which are owned by an insured. However, the person will not be covered if he has custody of the animals in the course of his business or without permission of the owner.

Plaintiff contends that the animals involved in the collision were not animals "to which the policy applies." Plaintiff argues this phrase refers to whether or not casualty coverage was maintained on the animals in question. It is argued that Roger McDermith was not an insured under this provision because his father had deleted the casualty coverage under the policy prior to the occurrence.

■■ We do not agree that this interpretation is necessary to give independent significance to the phrase "to which the policy applies" if in fact the expression was ever intended to be anything more than the drafter's use of words in constructing the sentence in question in grammatical English. A less selective reading reveals that we are in fact confronted with the phrase "animals or watercraft to which this insurance applies." There is an ambiguity as to whether the limiting words even apply to animals, rather than to watercraft alone. The latter interpretation is reasonable because a full reading of the policy reveals that exclusions are made pertaining to watercraft, while none are made pertaining to animals. Ambiguous expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer. (*Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America* (1952), 411 Ill. 325, 104 N.E.2d 250.) More to the point, we find nothing in the language of the policy to suggest that the existence of liability coverage in any way depends on the existence of casualty coverage.

Plaintiff also contends that the animals in question were not "owned by any Insured," on the theory that Dr. McDermith's only interest was a mere expectancy in the calves. Plaintiff relies on the rule that, in the absence of contrary agreement, the increase of all domestic animals belongs to the owner of the mother, with such ownership continuing until divested by some contract between the owner and some other person. 3A C.J.S. *Animals* §9 (1973).

■■ Here the existence of a "contrary agreement" was established by the testimony of Dr. McDermith and Roger McDermith. In consideration of breeding services, care and housing provided by Dr. McDermith, he was to receive a half interest in the calves born of Roger's cows. Possession was to be transferred by selecting half the calves after they were weaned. The fact that the calves involved in the accident had not yet been weaned, nor had selection been made, would not negate the existence of Dr. McDermith's ownership in them.

■■ Because Dr. McDermith, the named insured, was a part owner of the calves being kept on Roger's farm, Roger was a person "legally responsible" for animals "owned by any Insured" within the meaning of the policy provision in question. The only remaining question is whether Roger was exempted from the definition of an insured by reason of his having possession of the animals "in the course of his business." In the general conditions of the policy, farming was excluded from the definition of business. Defendants contend that the raising of cattle constitutes farming. Plaintiff, in its reply brief, concedes that the course of business exclusion does not apply here. Therefore, we hold that Roger McDermith was an "insured" as defined in the policy.

Finally, plaintiff contends that the following special exclusion to liability coverage applies:

"SECTION II OF THIS POLICY DOES NOT APPLY:

\* \* \*

(3) to any act or omission in connection with premises, other than as defined, which are owned, rented or controlled by an Insured

\* \* \* ."

"Premises" for purposes of liability coverage are defined to include "\* \* \* all premises which the Named-Insured or his spouse owns, rents or operates as a farm or maintains as a residence and includes private approaches thereto and other premises and private approaches thereto for use in connection with said farm or residence, except business property \* \* \* ."

The defendants contend that Roger's farm constituted "other premises \* \* \* for use in connection with" Dr. McDermith's farm. They note that Dr. McDermith assisted in work on his son's farm and sought to assure that Roger properly cared for the calves. They rely on *Davis v. Sheehan* (1976), 43 Ill. App. 3d 449, 357 N.E.2d 690, which held that an insured's right to use premises, together with actual use of them, rendered those premises within a definition identical to that in the policy here. *Davis* indicated that the "other premises" language extends the definition to premises other than those actually owned, leased or operated by the named insured, contrary to plaintiff's argument here.

■■ We find *Davis* persuasive and believe that on the evidence here, the trial court could have correctly concluded that Roger's farm constituted other premises for use in connection with Dr. McDermith's farm.

The trial court properly concluded that Roger McDermith was an additional insured under his father's policy and that Dr. D. J. McDermith was covered as part owner of the calves. The judgment of the Circuit Court of Fayette County is accordingly affirmed.

Affirmed.

JONES and HARRISON, JJ., concur.