No. 31,042.

MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*, v. CHICAGO GREAT
WESTERN RAILROAD COMPANY, *Appellee*.

(19 P. 2d 484.)

Opinion filed March 11, 1933.

*W. P. Waggener, J. M. Challiss, O. P. May* and *B. P. Waggener,* all of
Atchison, for the appellant.

*A. L. Berger,* of Kansas City, and *Walter H. Jacobs,* of Chicago, Ill., for the
appellee; *Ralph M. Shaw,* of Chicago, Ill., of counsel.

The opinion of the court was delivered by

THIELE, J.: This was an action for an injunction to prevent the
defendant from making a track connection with the Union Pacific
Railroad Company in Kansas City.

Prior to 1910 the Chicago Great Western Railroad Company,
hereinafter referred to as Great Western, had a grain elevator in
Kansas City. To the east of the elevator the Great Western had
seven switch tracks used in connection with the elevator. These
tracks had no direct or physical connection with any other track
of the Great Western company. On June 15, 1910, the Great West-
ern company and the Missouri Pacific Railway Company (prede-
cessor of the plaintiff company), which is hereinafter referred to as

the Missouri Pacific, entered into an operating contract giving to the Great Western certain trackage rights between the city of Leavenworth and Kansas City, and certain trackage and yard rights in Kansas City and other trackage rights not herein material. Under the terms of this contract the Great Western was enabled to use its elevator and its tracks appurtenant thereto. It is not disclosed clearly in what manner the Great Western used its elevator and tracks prior to said contract, but thereafter operations started under the contracts and have since continued. In so far as the matters in dispute herein are concerned, from 1910 to November 30, 1930, cars to be interchanged between the Great Western and the Union Pacific were handled over a connecting track and, at least since 1918, on tracks along Front street between lines of Washington and State avenues extended in Kansas City, making a connection between the Union Pacific and the Missouri Pacific, the track of the latter company being a part of the "joint property" referred to in the contract of June 15, 1910. For such interchange no charge was made by the Missouri Pacific until November 30, 1930. On November 7, 1930, the Missouri Pacific notified the Great Western and the Union Pacific that after November 30, 1930, any interchange between the Great Western and the Union Pacific through use of the facilities of the Missouri Pacific should first be interchanged to the Missouri Pacific and handled by it as an intermediate switch line, under published tariff rates. After November 30, 1930, the use of the above connecting track was abandoned.

Although plaintiff objected to the introduction of the evidence, it further appears that on April 23, 1931, the Union Pacific obtained from the city of Kansas City the right to construct a railroad track upon and across the public levee and across State avenue, and that the same company sought from the public service commission of Kansas an order authorizing it to construct a switch track from a point on its Wyandotte spur along the levee and across the Missouri Pacific tracks and across State avenue to form a connection with the track of the Great Western (one of the seven switch tracks above mentioned). The Missouri Pacific brought suit against the Union Pacific in the district court of the United States for Kansas for a permanent injunction to prevent the Union Pacific from proceeding with its application before the public service com-

mission. On trial, relief was denied. Thereafter, the public service commission entered an amended order and authorized the Union Pacific to construct its track across the track of the Missouri Pacific, which order includes the following:

"Provided, however, That said switch track shall be used only for the interchange of traffic between Union Pacific Railroad Company and Chicago Great Western Railroad Company."

The Missouri Pacific filed its petition in the Wyandotte county district court for a review of the order of the public service commission, and on trial the order was sustained. In March, 1932, the Union Pacific commenced construction of the track and, claiming the Missouri Pacific was interfering, filed suit for injunction against the Missouri Pacific and obtained a restraining order. The Missouri Pacific then appealed, and the decision was adverse to it. (*Union Pac. Rld. Co. v. Missouri Pac. Rld. Co.*, 136 Kan. 166.)

On April 15, 1932, the Missouri Pacific filed the present action and, after the opinion in the above-mentioned cause was filed, obtained a restraining order which prevented the Great Western from making a connection of one or more of its seven tracks with the track to be constructed by the Union Pacific. On July 27, 1932, the cause came on for hearing on the application for a temporary injunction and, as a result, the lower court made its order dissolving the restraining order and denying the temporary injunction. In his remarks made at the time judgment was entered, the court stated that he believed that plaintiff had an adequate remedy at law, and that, if there was any damage done by a violation of the contract, the interpretation of the parties during a long series of years was such that the court would be justified in construing it for the defendant. The Missouri Pacific appeals.

The petition alleges the execution of the contract; that the defendant was the owner of a grain elevator and railroad yard then and now comprising seven tracks connected at their northerly end with the track of the plaintiff; that said contract provided that the Great Western company shall not and will not do any local business between Leavenworth, Kan., and a designated point in Kansas City, Kan.; that the use granted is as provided in section 17 of said contract; that the defendant threatens to extend one or more of its seven tracks above referred to to connect with the track of the Union Pacific company, which is contemplated to cross one of the

main lines of the Missouri Pacific lying immediately adjacent to the ends of the above-mentioned seven stub tracks, and that so doing will deprive the plaintiff of revenue theretofore earned as an intermediate carrier; that the use granted "for switching movements exclusively in connection with the railroad yard adjacent to the Great Western company's elevator hereinbefore mentioned" was intended to limit the use of the plaintiff's tracks for switch movements of cars to and from the defendant's yards; that the right granted to the defendant was the right to use the same as established and used at the date of the contract; that, unless restrained, the Great Western will extend its stub track and make a connection with the Union Pacific and will operate its cars and train contrary to the terms, provisions and intendments of the above-mentioned contract; that, if the Great Western is permitted to do so, the plaintiff will suffer great and irreparable damage and injury, and that it has no adequate remedy at law. Thereafter the plaintiff filed an amendment and addition to its petition, alleging that both plaintiff and defendant are railroad corporations engaged in interstate commerce and subject to the control of the interstate commerce commission, under 49 U. S. C. A., section 1, paragraphs 18 to 22, inclusive; that the proposed construction by the Great Western is not a spur, industrial, team, switching or side track, but is an extension of the Great Western's railroad to territory new to it, which has been and is being adequately served by the Missouri Pacific; that such construction has been undertaken without securing a certificate of public convenience and necessity, all in violation of the statute.

The Great Western filed its answer and cross petition, the answer embodying a general demurrer and motion to dismiss for want of equity. The execution of the contract and of certain allegations were admitted, and general denial was made. It was specifically denied that the proposed extension of one of its seven tracks above referred to with the track of the Union Pacific was a violation of its contract with the Missouri Pacific, and that by the terms of said contract any intention was expressed to limit the use of plaintiff's track for switching movements, or that there was any intention in said contract forbidding the deposit of cars in defendant's yard brought in over the plaintiff's tracks and the handling out of said yard of cars previously brought in, and that the right granted precluded the extension of one of defendant's seven tracks, and mak-

ing other denials of the plaintiff's claimed rights under the contract. By way of affirmative allegation, the Great Western alleged that it had interchanged cars with the Union Pacific for a number of years, and that only a small amount of said interchange had been handled by the Missouri Pacific as an intermediate carrier; that since November 30, 1930, the interchange had been made by means other than the use of the Missouri Pacific as an intermediate carrier; that the Great Western and the Union Pacific have parallel tracks in Kansas City and the main-line freight track of the Missouri Pacific lies between the other two, and that, for many years prior to the execution of said contract and since that time, the Union Pacific and the Great Western exchanged business at this point, using a piece of track that formed a connecting link between their lines, which connecting track came into possession of the Missouri Pacific, but that on November 30, 1930, the Missouri Pacific notified the Union Pacific and Great Western that they could no longer use this track as an interchange track, the result being to compel the Great Western and the Union Pacific to deliver their interchange cars to the Missouri Pacific for exchange, which effected the exchange in a circuitous manner. The Great Western further denies that it is in violation of its contract to extend one or more of its seven tracks to connect with the track of the Union Pacific, and there are no conditions in the contract which would deprive the Great Western of interchange business between it and the Union Pacific across the Missouri Pacific tracks in the yards in Kansas City where the Great Western and Union Pacific have for years enjoyed joint facilities. In its cross petition the Great Western, among other allegations, stated that on November 30, 1930, the Missouri Pacific notified it that the track theretofore used by it and the Union Pacific as an interchange track could be no longer so used; that the Union Pacific obtained a right from the city of Kansas City to construct a track to connect with the track of the Great Western; that application was duly made to the public service commission of Kansas; that the Missouri Pacific filed suit in the district court of the United States for Kansas against the Union Pacific to restrain it from proceeding with its application, and on trial its bill of complaint was dismissed; that an amended order was obtained from the public service commission; that the Missouri Pacific filed its petition for review of the order in the district court of Wyandotte county, which court sustained the order, that the

Union Pacific started construction and completed the crossing over the Missouri Pacific tracks. Allegations were made that the business to be interchanged will not bring new business to either line; that the proposed connection and construction will enable the Union Pacific and the Great Western to interchange business in the same manner they did prior to November 30, 1930; that such interchange will effect economy and eliminate the Missouri Pacific from interchange operations. There are allegations that the Missouri Pacific interfered to prevent the connection being completed; that the Great Western has been damaged by previous acts, and that the damage will continue unless the Missouri Pacific is restrained. Attached to the answer and cross petition, as exhibits, are copies of the ordinance referred to, memorandum opinion in the case in the United States district court, copy of the amended order of the public service commission, and a copy of the journal entry of judgment in the suit of *Union Pacific v. Missouri Pacific* in the Wyandotte county court.

Although five assignments of error are made, appellant in its brief states that there are but two questions involved: (1) a construction of the contract, and (2) the right of the Great Western to connect its main line with the main line of the Union Pacific without having sought and obtained a certificate of public convenience and necessity therefor from the interstate commerce commission.

The following excerpts from the contract of June 15, 1910, cover the portions thereof necessary to be examined. In the preamble is the following:

"WHEREAS, The Great Western Company is the owner of . . . a grain elevator and a railroad yard now comprising seven (7) tracks, connected at their northerly end with the track of the Pacific Company . . .

. . . . . . . . . . . . . . .

"SEC. 3. The Pacific Company hereby also grants to the Great Western Company . . . the right to jointly use . . .

. . . . . . . . . . . . . . .

"(b) That portion of the track of the Pacific Company extending northwesterly from the connection with the track described in paragraph (a) of this section at or near Washington avenue, marked 'C' on the map attached hereto, marked 'Exhibit A,' to the east side of Fourth street (marked 'D' on said map), for switching movements exclusively in connection with the railroad yard adjacent to the Great Western Company's elevator, hereinbefore mentioned.

"SEC. 4. All of the tracks and their appurtenances, hereinbefore described, and of which the Great Western Company is granted the joint use, are hereinafter referred to as 'joint tracks,' or 'joint property.'"

"SEC. 5. The time during which the right to use the joint tracks is hereby granted and leased as aforesaid shall commence . . . and the Great Western Company hereby agrees to continuously use the tracks, property and other facilities of the Pacific Company as granted by this agreement, for the full term thereof, at Leavenworth and Kansas City, Kansas, and between said cities, for the operation of its passenger and freight trains, except as herein otherwise provided.

"SEC. 6. For the use of the joint tracks and property, and the rights and privileges herein granted, the Great Western Company hereby agrees to pay to the Pacific Company . . .

"(a) a fixed annual rental of . . .

. . . . . . . . . . . . . .

"SEC. 10. The Pacific Company shall at all times have the right to purchase additional lands and to make such additions and betterments to or in connection with the joint property as may, in the opinion of its proper officers, be necessary or desirable for economical and safe operation.

. . . . . . . . . . . . . .

"SEC. 16. The Great Western Company shall not and agrees that it will not do any local freight, passenger, mail or express business between Leavenworth, Kansas, and that portion of Kansas City, Kansas, lying northerly or westerly of the Kansas river or at any intermediate station between Leavenworth and the said Kansas river in said Kansas City—that is to say, local business between Leavenworth and the freight house and team tracks of the Pacific Company described in paragraph (b) of section 3 and the passenger station being erected by the Pacific Company as described in section 11 hereof, or any other point northerly or westerly of the Kansas river in said Kansas City, together with all business having origin or destination at intermediate stations, shall be deemed the exclusive business of the Pacific Company.

"SEC. 17. The use hereby granted to the Great Western Company is for its own business, including all business delivered to it by connecting lines, and the Great Western Company shall not, under cover of this agreement, permit or provide for the use by any other railroad company, or persons, of the said joint property, or haul the trains of others over the same, or any part thereof.

. . . . . . . . . . . . . .

"SEC. 19. The Pacific Company reserves the right to grant to other persons or corporations the use of said joint property, or any part thereof, in common with themselves, and the Great Western Company, provided that the admission of such other person or corporation to a common use of said property, or any part thereof, shall not unduly or unreasonably hinder or obstruct the Great Western Company in the exercise of the rights granted hereunder."

Appellant contends that under the provisions of sections 3, 10, 16, 17 and 19, the appellee has no right to connect its switch tracks with the Union Pacific and eliminate the appellant as an intermediate carrier, and the appellee on its part contends that the contract does not so prevent, or if there is ambiguity in the contract that the operative construction given it by the parties precludes up-

holding appellant's contention. In construing the contract, we are concerned primarily with the obligations of the Great Western. In the preamble the Great Western is described as owner of seven tracks and, under section 3, it has use of joint property as defined in section 4 "for switching movements exclusively in connection with the railroad yard adjacent to the Great Western Company's elevator, hereinbefore mentioned." The Great Western's obligation, under section 5, is to "continuously use the tracks, property and other facilities of the Pacific Company, as granted by this agreement" and, under section 6, to pay for such joint use a stipulated annual rental and certain maintenance charges. Its negative obligation, under section 16, is not to engage in local business between Kansas City, Kan., and Leavenworth and, under section 17, the use granted to the Great Western is for its own business, "including all business delivered to it by connecting lines," etc.

It will be observed that the above contract binds the Great Western to use the joint property continuously, but not exclusively, unless the expression in section 3 does so. The meaning of the contract must be determined from all its parts, and not from an isolated clause or paragraph, and section 3 is modified by section 17, which provides that the use is granted for "its own business, including all business delivered to it by connecting lines." It might well be held that, under the contract, there being no provisions prohibiting it, the Great Western was at liberty at any time to connect any one of its seven tracks with the Union Pacific or any other road it could reach. But whether the above is a correct construction of the contract itself, the record discloses that during all the life of the contract cars were interchanged by the Great Western and the Union Pacific, using a switch track of the Union Pacific and the joint property described in the contract, and that no objection was made by the Missouri Pacific until November, 1930, when the Missouri Pacific demanded that it be recognized as an intermediate carrier and paid certain switching or interchange charges according to its published tariffs. To ascertain the rights and liabilities of parties to a contract, and what is intended by the contract, courts will look to the language employed, the subject matter and the surrounding circumstances, and the construction given a contract by both parties through a term of years is persuasive in arriving at their intention and purpose. *Berg v. Scully,* 120 Kan. 637, 641, 245 Pac. 119. It must be held that under the contract, and under the undisputed evi-

dence of operations thereunder, the Great Western and the Union Pacific had the right to interchange cars without using the Missouri Pacific as an intermediate carrier, and that by reason of the contract and the operations under it the Missouri Pacific cannot now deny the right of the Great Western to make a direct track connection with the Union Pacific and to make direct interchange of cars. On the other hand, if the Great Western and Union Pacific exchange cars by reason of a connection made or to be made by extension of a Great Western switch track to connect with the Union Pacific track, and such exchange is in violation of the contract between the Great Western and Missouri Pacific, the damage flowing from such breach is ascertainable in money, and the Missouri Pacific would have an adequate remedy at law, and the injunction sought should be denied.

The appellant contends that the proposed connection is one that can be made only under authority granted by the interstate commerce commission under the provisions of 49 U. S. C. A., section 1, paragraphs 18 to 22, inclusive, section 22 of which reads as follows:

"The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching or side tracks, located or to be located wholly within one state," etc.

The appellant says the proposed connection is an extension of the roads of the Great Western and of the Union Pacific, while the appellee says the connection is a switching track to be used only for switching and interchange of cars. The contention made by the appellee that appellant is not a party in interest and cannot raise the question as to the necessity of procuring the required authority is not good. See *Claiborne-Annapolis Ferry v. U. S.*, 285 U. S. 382, 52 Sup. Ct. 440, 76 L. Ed. 808. Appellant relies upon *People v. Public Service Commission*, 233 N. Y. 113, 135 N. E. 195, 22 A. L. R. 1073, and upon *Alabama Ry. v. Jackson Ry.*, 271 U. S. 244, 46 Sup. Ct. 535, 70 L. Ed. 928, but in each of these cases attempts to force connections were resisted by one of the carriers involved and in each case the court found, under the facts, that the tracks ordered built were not within the statutory exception.

In *Detroit & M. Ry. Co. v. Boyne City, G. & A. R. Co.*, 286 Fed. 540, 547, in a case arising under the transportation act, *supra*, the distinction between extensions and switches was made, viz.:

". . . the distinguishing feature between 'extensions' and 'new lines' on

the one hand, and 'spur, industrial, team, switching or side tracks,' on the other, as used in this statute, is this: That the former are tracks over which there are to be train movements in the sense that such movements are a part of the actual transportation haul from the shipper to the consignee, while the latter named tracks are for use in loading, reloading, storing, and switching the cars and other things merely incidental to the regular train haul."

The record shows that the entire track to be constructed is approximately three hundred and fifty (350) feet long and the cost thereof approximately two thousand three hundred dollars ($2,300) and that it is completed with the exception of about ten feet. The evidence showing the previous method of operation between the Great Western and the Union Pacific and the purposes to be accomplished by the proposed switch connection precludes an interpretation that trains are to be run from the Union Pacific over this switch connection and thence on over Great Western switch tracks and thence over the joint property described in the contract, or in a reverse manner, but shows that all that is intended or is to be accomplished is a switching of cars to be interchanged, and the order of the public service commission so restricts the use of the connection.

In the action for injunction brought in the United States district court by the Missouri Pacific against the Union Pacific, the construction of track by the Union Pacific and the crossing of the Missouri Pacific track to connect with the Great Western track was held not to be such construction as required a certificate of public convenience and necessity from the interstate commerce commission. While that decision and holding is not *res judicata* in this cause, it is persuasive. It is difficult to see why authority is not required for one end of the line but is required for the other.

It is held that the connecting track involved in this cause is a "switch" and not an "extension," and authority from the interstate commerce commission is not necessary.

The judgment of the lower court is affirmed.