[Civ. No. 25621. First Dist., Div. Four. Aug. 6, 1969.]

ATCHISON, TOPEKA AND SANTA FE RAILWAY COM-
PANY, Plaintiff, Cross-defendant and Respondent, v.
CHARLES ABAR et al., Defendants, Cross-complainants
and Appellants.

458

Charles Abar, in pro. per., for Defendants, Cross-complainants and Appellants.

John J. Balluff, Robert B. Curtiss, John J. Schimmenti, Roderick D. Hayes and Carlson, Collins & Bold for Plaintiff, Cross-defendant and Respondent.

Randolph Karr as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

RATTIGAN, Acting P. J.—Respondent railroad brought this action to quiet title, and for injunctive relief, relative to a portion of its trackage right of way. Defendants appeal from a judgment in favor of the railroad and against them on their cross-complaint.

According to the evidence: At Gately, in an unincorporated area of Contra Costa County, the railroad's main line track runs in a northeasterly direction between the cities of Richmond and Pinole. Immediately adjacent to a street known as Walter Avenue, which crosses the track at grade, the railroad's right of way is 300 feet wide; in and beyond the street, it is 100 feet wide. The railroad acquired both sectors in 1901, from a predecessor railway company to whom the right of way had been conveyed in 1898. The grantor was H. G. F. Dohrmann, the owner of the underlying fee. Defendants Abar acquired a portion of the underlying fee, as Dohrmann's successors, in 1964. In 1966 the railroad built a "team track" on its right of way, adjacent to the Abar property. The appearance of the immediate area in and after 1966 is depicted in the following sketch: (See following page.)

The 1898 deed by Dohrmann granted the railroad's predecessor, ". . . and to its successors and assigns forever, a right of way for the excavation, construction and maintenance of a broad-gauge railroad bed, and the right to lay down and maintain thereon a railroad track or tracks of standard width,

with all necessary switches and turn-outs, and to pass with a railroad and to run locomotives and cars thereon, along, over and across that certain strip or parcel of land . . . lying on each side of the located line of . . . [the predecessor railroad] . . . where the same is located through Lot 'A' of the

Dohrmann ranch . . . said tract being bounded and particularly described as follows to wit: . . ." The description which follows is by surveyed courses and distances only. It does not refer to Walter Avenue or to any other street; it fairly appears that no streets existed in the area at any time.

The 1898 deed was executed by Dohrmann on January 18,

1898, and recorded in the official records of Contra Costa County on January 26, 1898. Walter Avenue first appeared in a subdivision map entitled "Map of Bay Villa" and recorded by one Evelyn Tyler on February 21, 1899. The map covered the portion of Lot "A" of the Dohrmann ranch across which the railroad right of way had been granted in 1898, and it showed the right of way crossing Walter Avenue—which was apparently one of several streets newly created in the Bay Villa subdivision—in its present location. A legend on the subdivision map, in the 300-foot-wide right of way next to Walter Avenue, stated "Reservation for passenger and freight depot": we hereinafter discuss this evidence in more detail.

Uncontradicted testimony defined a "team track." The evidence also showed that the railroad had maintained a team track in the area in 1916 and again in 1944; neither, however, had been located on the land which became the Abar property in 1964, and neither had involved the use of that property for access to it. It was also shown that, in and after 1966, the railroad's freight customers had commenced to use the "team driveway" (which, as shown in the sketch *supra*, is on the Abar property) for vehicular access from Walter Avenue to the team track (which is not), and for unloading freight from railroad cars on the track. Defendant Charles Abar, disputing this use of his property, blocked the driveway by parking vehicles near the entrance. The evidence is clear that he parked the vehicles on Walter Avenue itself at times, but it appears — if somewhat less clearly — that he occasionally parked them on the team driveway and inside the Abar property line.

The barricade, preventing use of the team driveway, interrupted the team track operation. The railroad thereupon commenced this action, seeking to quiet title to its right of way and to enjoin interference with access to it. Defendants cross-complained to quiet title to the underlying fee involved, and for other relief which they do not pursue on the appeal.

The allegations of the railroad's complaint included a recital that Walter Avenue was a public street. Defendants' answer did not expressly deny the fact recited, but it pleaded as separate defenses (1) that the railroad was estopped from asserting the fact; and (2) that a Public Utilities Commission proceeding had established that Walter Avenue was not a public street, which fact was therefore adverse to the rail-

road's present contention and—because the railroad had been a party to the Public Utilities Commission proceeding—res judicata. Conflicting evidence concerning Walter Avenue's history included testimony that it had been used by the public for more than 30 years.

From the foregoing evidence, and as pertinent here, the trial court made the following findings of fact and conclusions of law (deletions, bracketed interpolations and italics by this court):

"FINDINGS OF FACT

" . . . . . . . . . . . . . . . . . . . . . . . . . .

"2. That . . . [the railroad] . . . is the owner of a 300 foot right of way *for railroad purposes* located near Gately, California, and more particularly described in the deed dated January 18, 1898, . . .

"3. That the [1898] deed states in part thereof that . . . [the railroad's] . . . predecessor is granted: . . . [the court here recited the grant language and other provisions of the 1898 deed quoted *supra*] . . .

"4. That . . . [in 1966 the railroad] . . . constructed a team track on its said right of way . . . A team track consists of railroad tracks which are used to switch railroad cars off the main line and for the purpose of storing them to allow the owner of freight to unload the same from such railroad cars. In 1916 and in 1944, . . . [the railroad] . . . had team tracks at Gately, California, on its right of way immediately adjacent to the right of way involved in this litigation.

"5. That since becoming the owner of said right of way, . . . [the railroad] . . . has continuously used the same for railroad purposes.

"6. That Walter Avenue is 60 feet wide where it crosses . . . [the railroad's] railroad tracks and it has been used continuously by . . . [the railroad] . . . and the public for a period of over 30 years last past as a means of ingress and egress to and through . . . [the railroad's] . . . right of way.

"7. Defendants . . . [Abar] . . . are the owners of the fee title to the property over which . . . [the railroad] . . . has the hereinbefore mentioned right of way.

"8. Defendant . . . Charles Abar . . . has parked trucks in a location *on Walter Avenue* which was in an area in front of a portion of . . . [the railroad's] . . . right of way and

blocked the only means of ingress and egress to the said team track and railroad cars thereon . . .

"9. That . . . [defendants'] . . . action in *blocking Walter Avenue* interfered with the use of . . . [the railroad's] . . . property and prevented customers from obtaining freight which was conveyed to them on railroad cars located on said team track.

" . . . . . . . . . . . . . . . . . . . . . . . .

"Conclusions of Law . . .

"1. That Walter Avenue is a public street and . . . [the railroad] . . . had the right *to use Walter Avenue* as a means of ingress and egress to all portions of a 300 foot right of way at Gately, California, and more particularly described in . . . [the 1898 deed] . . .

" . . . . . . . . . . . . . . . . . . . . . . . .

"3. Defendants . . . are the owners in fee of the said 300 foot right of way . . . , but said defendants . . . are not entitled to the use or possession of any portion of said right of way and have no right to interfere with . . . [the railroad's] . . . access from Walter Avenue to said right of way.

"4. That defendants . . . should be enjoined and restrained from interfering with . . . [the railroad's] . . . *use of Walter Avenue* for ingress and egress to its said railroad right of way and from interfering with . . . [the railroad's] . . . use of trucks or other vehicles to pick up and deliver freight from freight cars located on said team track at Gately, California."

The judgment declared that the railroad owned the right of way as described in the 1898 grant; that it was entitled to the "exclusive possession" thereof; that defendants had no right "to the possession or use of any portion of said right of way"; and that "defendants . . . are perpetually enjoined and restrained from interfering with . . . [the railroad's] . . . *use of Walter Avenue* as a means of ingress and egress to, from and through said right of way, and from interfering with . . . [the railroad's] use of said right of way *for all railroad purposes.*" It further denied defendants any relief under their cross-complaint. This appeal followed.

Defendants' principal contention is that the findings are not supported by the evidence. It is undisputed that the railroad owns the 300-foot right of way adjacent to Walter Avenue. Since some of the actions by both parties involve Walter Avenue, we first consider those findings which deal

with its use and status as a public street. The fact of its use by the public for more than 30 years was determined by the trial court upon conflicting evidence, some of which supports finding No. 6. That finding, therefore, will not be disturbed on the appeal. (*Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Waller* v. *Brooks* (1968) 267 Cal. App.2d 389, 394 [72 Cal.Rptr. 228].)

Although the issues of estoppel and res judicata, were raised in defendants' answer relative to the status of Walter Avenue, and although there was some evidence pertaining to both subjects, the trial court made no findings or conclusions as to either. Defendants do not pursue the res judicata point on their appeal, but they continue to urge that the railroad is estopped from asserting that Walter Avenue is a public street. But they requested no finding on the subject of estoppel: for that reason, and because the existence of an estoppel is a question of fact for the trial court (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]), we infer in support of the judgment that the trial court found that the railroad was not estopped as defendants claimed. (2 Witkin, Cal. Procedure (1954) Trial, § 118, pp. 1850-1851; *op.cit.* (1967 Supp.) pp. 715-716.)

It follows that the trial court's conclusion of law No. 1 is correct in declaring the railroad's right "to use Walter Avenue" for ingress and egress to and from its right of way. It is undisputed that defendant Charles Abar blocked such ingress and egress by parking trucks on Walter Avenue outside the team driveway entrance, and that these acts interfered with the use of the right of way and with ingress thereto by the railroad's customers. Findings 8 and 9—which state these facts only—are thus supported by the evidence; conclusions of law 3 and 4 are correct to the extent that they declare that defendants have no right to use Walter Avenue to interfere with the railroad's activities; and the judgment correctly enjoins defendants from interfering with the railroad's "*use of Walter Avenue* as a means of ingress and egress to . . . [and] . . . from . . . said right of way." (Italics added.)

The just-mentioned provisions of the judgment—as far as they go—establish that defendants cannot block a public street so as to interfere with the use thereof by the railroad and by its freight customers. Since these provisions are supported by evidence (as we have seen), the judgment must be affirmed to this extent. But the trial court went

further: the judgment (1) declares that the railroad is entitled to the possession and use of the right of way, to the absolute exclusion of defendants, and (2) enjoins defendants from interfering with the team track operation even if they do not interfere with the use of Walter Avenue. In our view, the declaration misconceives the roles of the parties in their relationship as servient and dominant owners; the injunction validates the railroad's team track operation under the 1898 grant of the right of way; neither determination is supported by the evidence; and the judgment must therefore be reversed with respect to both.

It is not disputed that defendants own the fee underlying the southeasterly one-third of the railroad's right of way (see sketch, *supra*); the trial court's finding No. 7 is therefore supported by the evidence. But this means that they are servient owners subject to the railroad's easement as granted in 1898. ■ Where an easement is founded upon a grant, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee; the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement. (*Pasadena* v. *California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579 [110 P.2d 983, 133 A.L.R. 1186]; *City of Los Angeles* v. *Igna* (1962) 208 Cal.App.2d 338, 341 [25 Cal.Rptr. 247]. See 2 Witkin, Summary of Cal. Law (7th ed. 1960) Real Property, § 182, pp. 1021-1022.) Defendants, accordingly, are not excluded from such possession and use of their own land which does not amount to an unreasonable interference with the railroad.

On the other hand, the rights of the railroad as dominant owner are defined by these rules: The scope of an easement is determined by the terms of its grant. (Civ. Code, § 806.) ■ The grant of an unrestricted easement, not specifically defined as to the burden imposed upon the servient land, entitles the easement holder to a use limited by the requirement that it be reasonably necessary and consistent with the purposes for which the easement was granted. (*Pasadena* v. *California-Michigan etc. Co., supra,* 17 Cal.2d 576 at p. 582; *Wall* v. *Rudolph* (1961) 198 Cal.App.2d 684, 692 [18 Cal. Rptr. 123, 3 A.L.R.3d 1242].) This permits a use consistent with "normal future development *within the scope of the basic purpose* [citations], but not an abnormal development, one which actually increases the burden upon the servient tenement. . . . California courts have set their faces firmly

against such increases in the burden upon the servient tenement." (*Wall* v. *Rudolph, supra,* [italics added].) ██ So long as an easement exists, both parties have the right to insist that it shall remain substantially the same as it was when granted, regardless of the relative benefit or damage that would ensue to the parties by reason of a change in the mode and manner of its enjoyment. (*Whalen* v. *Ruiz* (1953) 40 Cal.2d 294, 302 [253 P.2d 457] [quoted, with additional citations, in *Wall* v. *Rudolph, supra,* at pp. 694-695].)

██ The trial court—in effect, if not explicitly—determined that the 1898 deed permitted the team track operation maintained by the railroad in and after 1966. This required the court to interpret the 1898 deed. It did so without extrinsic evidence concerning the intent of the parties to the deed, but with the aid of undisputed evidence as to the definition of "team track" (which the court expressed in its finding No. 4) and the railroad's use of the track in question. Under these circumstances, we are required to interpret the 1898 deed independently and with the aid of the same evidence. (*Faus* v. *City of Los Angeles* (1967) 67 Cal.2d 350, 360-361 [62 Cal.Rptr. 193, 431 P.2d 849].)

In *Simons Brick Co.* v. *City of Los Angeles* (1920) 182 Cal. 230 [187 P. 1066], a Los Angeles County ordinance granted a railroad a right of way on county highways " 'for the purpose of constructing, maintaining and operating a single or double track railway thereon, for passengers, freight, United States mail and baggage; . . . together with the right to construct all switches, turnouts, power houses and other appliances, properties, structures and attachments that may be necessary for the purpose of operating said road . . .' " (*Ibid.,* at p. 231.)

The railroad built an industrial spur-track which served the plaintiff brick company. The Supreme Court held that the language of the railroad's franchise did not authorize the spur-track. (182 Cal. 230 at p. 232.) The court (*ibid.*) interpreted the franchise as authorizing only the construction and operation of a main line railroad plus "switches" and "turnouts" which, by definition, were "no more than the customary short tracks which are usually resorted to for the purpose of enabling and facilitating main-line track movement": whereas an industrial spur-track was "not an adjunct usual or necessary to the primary operation of main-line trains and cars," and was neither a "turnout" nor a "switch."

In the present case, the 1898 deed authorized the railroad to construct a track or tracks "with necessary switches and turnouts" and to operate ("pass with") a railroad across the Abar property. Because it was not materially distinguishable from the *Simons* franchise in these respects (*Simons Brick Co.* v. *City of Los Angeles, supra,* 182 Cal. 230 at p. 231), we follow *Simons* in concluding that it was limited to main-line railroad operations with "switches and turnouts" adjunctive thereto.

At least one California court has stated that "the building and operating of a station" is permitted by a grant of a railroad right of way "for railroad purposes only." (*City of Glendora* v. *Faus* (1957) 148 Cal.App.2d 920, 926 [307 P.2d 976].) The grant provisions of the 1898 deed in the present case contain no such unlimited language. The term "railroad purposes" appears only in the deed's definition of the use whose cessation will effect a reversion to the grantor; so used, the term does not operate to expand the extent of the use permitted by the deed. Thus, the trial court's finding of fact No. 2 is unsupported by the evidence to the extent that it declares the railroad to be the owner of a right of way "for railroad purposes," because the 1898 deed does not so provide. Finding No. 5, that the railroad has "continuously used . . . [the right of way] . . . *for railroad purposes*" (italics added) is similarly unsupported. The only evidence of a railroad use for other than main-line purposes was testimony that (as declared in finding No. 4) team tracks were operated in the vicinity in 1916 and in 1944. Neither of these was on the present Abar property, and the operation of neither of them gave the railroad any greater rights than it acquired in the 1898 deed.

The next question is whether a "team track" is part of a main-line railroad operation. ▮ Although the term has not been defined in the California decisions, its meaning is apparently well settled in courts of other jurisdictions and among lexicographers. A team track is a siding upon which a railroad places cars for the loading and unloading of freight by its customers who have access to the siding by truck (or "team") on an adjacent driveway. (*New Orleans Terminal Co.* v. *Spencer* (E.D.La. 1965) 255 F.Supp. 1, 20, fn. 36 and authorities there cited; *Chicago & E.I.R. Co.* v. *Chestnut Bros.* (1905) 28 Ky. Law Rep. 393 [89 S.W. 298, 299] ; Webster's Third New Internat. Dict. (1967) p. 2346, col. 3; 74 C.J.S. Railroads, § 1, par. p, p. 334. See *Sam Finley, Inc.* v.

*Standard Acc. Ins. Co.* (1956) 41 Tenn.App. 417 [295 S.W.2d 819, 823]; *Missouri Pac. R.R. Co.* v. *Chicago Great Western R.R. Co.* (1933) 137 Kan. 217 [19 P.2d 484, 489]; *Miller Engineering Co.* v. *Louisiana Ry. & Nav. Co.* (1919) 144 La. 786 [81 So. 314, 317].)

A team track, moreover, is a kind of freight depot (*Sam Finley, Inc.* v. *Standard Acc. Ins. Co., supra,* 295 S.W.2d 819 at p. 823; *Miller Engineering Co.* v. *Louisiana Ry. & Nav. Co., supra,* 81 So. 314 at p. 317), whose maintenance by the railroad provides a "terminal facility" which is not part of the operation of a main line as such (*Missouri, K. & T. R. Co.* v. *Texas & N. O. R. Co.* (5th Cir. 1949) 172 F.2d 768, 769), and which is "merely incidental" thereto. (*Missouri Pac. R.R. Co.* v. *Chicago Great Western R.R. Co., supra,* 19 P.2d 484 at p. 489; *Detroit & M. Ry. Co.* v. *Boyne City, G. & A. R. Co.* (E.D.Mich. 1923) 286 F. 540, 547.)

 In the present case, the facts declared in the second sentence of the trial court's finding No. 4 (which was based upon uncontroverted testimony) demonstrates that the railroad siding here in question was a typical "team track." Accordingly, it was neither a "switch" nor a "turnout," and it was "not an adjunct usual or necessary to the primary operation of main-line trains and cars." (*Simons Brick Co.* v. *City of Los Angeles, supra,* 182 Cal. 230 at pp. 232-233.) For these reasons, its maintenance and use were not permitted by the 1898 deed.

Nor is the team track, as a kind of freight depot (*Sam Finley, Inc.* v. *Standard Acc. Ins. Co., supra,* 295 S.W.2d 819 at p. 823; *Miller Engineering Co.* v. *Louisiana Ry. & Nav. Co., supra,* 81 So. 314 at p. 317), permitted by the legend ("Reservations for . . . freight depot") on the Bay Villa subdivision map recorded in 1899. The map was recorded more than one year after H. G. F. Dohrmann granted the railroad right of way in January, 1898. It mentions neither the 1898 deed nor its terms. So far as appears, neither Dohrmann, the railroad, or the latter's predecessor participated in the recording or in the establishment of the Bay Villa subdivision. The only historical information appearing on the map is a recital that Evelyn Tyler (who recorded it) had acquired the newly mapped property from one E. E. Laymance by recorded deed dated October 18, 1898. Accordingly, the map shows no action by anyone which would have operated as a legally effective "reservation" which would permit a "freight depot" use not authorized by the 1898 deed.

Except for its reference to unlimited "railroad purposes" as previously discussed herein, the trial court's finding No. 2 (relative to the railroad's ownership of the right of way) is supported by undisputed evidence. So is the finding (No. 7) that defendants own the Abar property in fee, but subject to the right of way. The parties are therefore entitled to judgment quieting title to the respective properties. However, since the railroad's team track operation in and after 1966— insofar as it involves ingress to the Abar property and egress therefrom by the railroad's freight customers—is not permitted by the 1898 deed or under any other evidence, the railroad is not entitled to injunctive relief except with respect to the use of Walter Avenue itself. Accordingly, the judgment must be reversed in part, with directions, as hereinafter ordered; upon remand, appropriate judgments can be entered by the trial court.

During the pendency hereof defendants moved this court for leave to present additional evidence on appeal. The motion, which we took under submission, is beyond our capacities as an appellate court, and our disposition of the appeal renders it moot in substantial part. For the record, we deny the motion.

The motion for leave to present additional evidence on appeal is denied. The judgment from which defendants appeal is affirmed insofar as it quiets respondent railroad's title to its right of way and enjoins defendants from interfering with respondent's use of Walter Avenue. In all other respects, the judgment is reversed. The cause is remanded to the trial court with directions to enter judgment in favor of defendants (1) denying injunctive relief against them except with respect to the use of Walter Avenue; and (2) on their cross-complaint, quieting their title to the real property therein described. Defendants to recover costs on appeal..

Christian, J., and Brown (H. C.), J.,* concurred.

A petition for a rehearing was denied September 5, 1969, and the opinion and judgment were modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied November 26, 1969. Traynor, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.