84 Cal.App.3d 315 (1978)
148 Cal. Rptr. 535
THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff and Appellant,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY et al., Defendants and Respondents.
Docket No. 16355.
Court of Appeals of California, Third District.
August 25, 1978.
*319 COUNSEL
Harry S. Fenton, John B. Matheny, Joseph C. Easley and O.J. Solander for Plaintiff and Appellant.
Diepenbrock, Wulff, Plant & Hannegan, John V. Diepenbrock, James T. Freeman and G. Anthony Tessier, Jr., for Defendants and Respondents.
OPINION
EVANS, J.
In this eminent domain proceeding, we consider whether the trial court properly construed defendant's[1] (Southern Pacific Transportation Company) interest in the land and correctly applied appropriate valuation standards in determining the award of damages. We have concluded that the interest taken by the state was properly categorized and correctly valued.
Plaintiff, State of California, Department of Transportation (Caltrans), sought to condemn land in Sacramento for use as Highway 50. A portion of the land needed was a strip approximately 6,380 feet long, averaging *320 21 feet in width, and was part of Southern Pacific's 100-foot wide right-of-way in the City of Sacramento known as the "R" Street line.
Defendant produced evidence indicating its use of the right-of-way as a transportation corridor through urban Sacramento. The uses of the land at the time of the taking involved maintenance and operation of a double track railroad for service to adjoining industrial uses, transportation of people and products by rail and the latter also by pipeline. Defendant also leased portions of the right-of-way to various utilities which utilized portions of the land for underground electrical lines, high pressure petroleum lines, and water lines.
Defendant also introduced evidence of its future intended uses of the property which included lumber facilities, rapid transit, pipelines for utilities, petroleum products and slurry products (coal), transmission lines for electricity, underground transmission lines and communication cables, together with other railroad uses.
Although the area taken did not interfere with defendant's existing railroad double track operations, it did affect the intended construction of a "runaround track" to service industrial users and eliminated any future transportation uses intended for that part of the right-of-way. At trial Caltrans argued that compensation to defendant should be nominal and predicated upon the railroad's use of the property as a double track railroad line only. Defendant contended that just compensation required consideration of the use of the property as a transportation corridor and the award of damages on the basis of the cost of reproduction.
The trial court instructed the jury on defendant's theory that it was entitled to use of the property as a "transportation corridor" and the jury awarded defendant $183,636.38 as compensation for its loss.
On appeal from the judgment the state presents three contentions by brief and oral argument. We have considered each of them and conclude they do not justify a reversal of the judgment.

I
(1a) Plaintiff contends that the railroad's use of the property was limited to operation of a double track railroad only, requiring payment of nominal damages only for loss of that limited use.
*321 Southern Pacific acquired the right-of-way in 1857 by condemnation proceedings instituted pursuant to the Statutes of 1853, chapter 72 "AN ACT To provide for the Incorporation of Railroad Companies," section 28 (the Act). That section provides in pertinent part, "Until otherwise provided by law, any company organized under this Act, may enter upon, take possession of, and use all such real estate and property as may be required for the construction and maintenance of a single or double track railroad, and the convenient accommodations appertaining to the same, by complying with the following provisions: Whenever the said corporation shall not have acquired by gift, or purchase, any land, real estate, or property, so required as aforesaid, or which may be affected by any operation connected with such construction and maintenance, it shall be lawful for the company,... to apply to the Judge of the District Court, ... of the county where the said lands, real estate, or property shall lie, praying the appointment of commissioners to ascertain the compensation to be made to such owners and persons interested, for the taking or injuriously affecting such lands, real estate, or property as aforesaid.... Upon the entry of such rule, the said company shall become entitled to use and occupy all lands, real estate, and property described in said rule, as required to be taken as aforesaid during the continuance of the corporation, by this or any subsequent Act; and may take possession of what they are not at the time in possession of, and hold and use all described in said rule for the purposes of said road, or otherwise for the benefit of the company, ..." (Stats. 1853, ch. 72, § 28, pp. 108-110.)
(2) Although the statute appears initially to limit the railroad's use of the property, it later provides that the railroad "may ... use ... [the property] for the benefit of the company." It clearly authorizes use of the property for any purpose the railroad deems beneficial. The determination that the authorizing statute was intended to permit any use beneficial to the railroad is supported by language contained in section 27 of the Act. That section authorizes use of the land acquired for any purpose "deemed necessary to accomplish the objects of the Company."
(3) One of the original basic purposes of the Act was to provide for the settlement and industrial development of the state through development of efficient systems of transportation and communication. (See Davis et al., American Economic History (3d ed. 1969) pp. 138-139.) As we perceive the authorizing statute (§ 28), the grant of authority to the railroad to acquire and use property must be construed in a manner *322 which would encourage utilization of the right-of-way for all transportation uses.
In describing the extent to which a railroad may utilize property acquired, the court in City of Long Beach v. Pacific Elec. Ry. Co. (1955) 44 Cal.2d 599, 603 [283 P.2d 1036], stated, "[A] railroad may use its right of way for many commercial purposes unless specifically prevented from so doing. For example, the following uses for a railroad right of way have been held to be proper since they contribute to the railroad's business; a sawmill, lumber shed, store or boarding house [citation]; a manufacturing company [citation]; a grain elevator and warehouse [citation]; a lumber yard, corn crib, grain elevator and warehouses [citation]." The amplitude of railroad's rights-of-way has been variously described. In San Gabriel v. Pacific Elec. Ry. Co. (1933) 129 Cal. App. 460, 464 [18 P.2d 996], the court delineated the nature of the easement to be one "`"... peculiar to the use of a railroad which is usually a permanent improvement, a perpetual highway of travel and commerce, and will rarely be abandoned by non-user. The exclusive use of the surface is acquired and damages are assessed on the theory that the easements will be perpetual; so that ordinarily the fee is of little or no value unless the land is underlaid by a quarry or mine."'" (See also Southern Pac. R.R. Co. v. S.F. Sav. Union (1905) 146 Cal. 290, 292-293 [79 P. 961].)
(4) The use of an easement for all reasonable purposes is "`limited only by the requirement that it be reasonably necessary and consistent with the purposes for which the easement was granted.' [Citation.] This reasonable contemplation presumptively includes normal future development within the scope of the basic purpose [citations], but not an abnormal development, one which actually increases the burden upon the servient tenement [citation]." (Wall v. Rudolph (1961) 198 Cal. App.2d 684, 692 [18 Cal. Rptr. 123, 3 A.L.R.3d 1242].) As civilization advances and new and improved methods of transportation are developed, any use of the right-of-way which is in aid of and within the right-of-way's general purposes may be permitted, and does not entitle the owner of the subservient estate to be compensated anew for every improvement or compensated for every change of the use of the land made imperative by advances of technology and transportation improvements. (Collopy v. United Railroads (1924) 67 Cal. App. 716, 723 [228 P. 59].) (1b) Moreover, the fact that at the present moment the railroad has not made use of all of the right-of-way does not preclude it from future full utilization and compensation predicated upon that contemplated full use. (See *323 Haley v. L.A. County Flood Control Dist. (1959) 172 Cal. App.2d 285, 290-292 [342 P.2d 476].)[2]
The authorities relied upon by Caltrans for the proposition that use of the railroad right-of-way may not be expanded to accommodate future transportation uses are inapposite and distinguishable. A blatant distinction is noted in two of the cases cited. In each the right-of-way was subject to an express limitation in the grant as to the use of the property. (See Kansas City South. Ry. Co. v. Arkansas Louisiana Gas Co. (10th Cir.1973) 476 F.2d 829, 831, in which the enabling statutes provided that "`... no part of the lands herein authorized to be taken shall be leased or sold by the company, and they shall not be used except in such manner and for such purposes only as shall be necessary for the construction and convenient operation of said railroad, telegraph, and telephone lines, ...'") In Atchison, T. & S.F. Ry. Co. v. Abar (1969) 275 Cal. App.2d 456, 458-459 [79 Cal. Rptr. 807], the grant provided that the railroad's right of use was limited to the construction of a track or tracks "with all necessary switches and turn-outs" and the right to utilize the tracks and cross defendant's property.
The following authorities factually concern situations in which expansion of the easement was restricted as not consistent with social utility or public policy and are also here inapplicable: Wright v. Best (1942) 19 Cal.2d 368, 375, 382-385 [121 P.2d 702]; Winslow v. City of Vallejo (1906) 148 Cal. 723, 724 [84 P. 191]; Wall v. Rudolph, supra, 198 Cal. App.2d at page 695. Finally, the decision cited by plaintiff in support of the contention that except as expressly mentioned in the grant, a right-of-way does not confer any privilege to use the subsurface area of the property is distinguishable. In that case the easement holder was attempting to extract minerals from the property rather than extending the use of the property for transportation purposes. (See Southern Pac. R.R. Co. v. S.F. Sav. Union, supra, 146 Cal. at pp. 299-300.)
*324 The trial court correctly rejected plaintiff's contention that value should be predicated upon a limited use concept and correctly held that compensation should be determined on the use of the property as a "transportation corridor."

II
Caltrans contends that it was error for the trial court to instruct the jury that it could consider the cost of reproducing the right-of-way as a means of arriving at a proper measure of damage. Plaintiff hypothesizes that consideration of the cost of reproduction should have been limited to replacement value of improvements on the land and that it was error to permit the production of evidence by which the cost of reproduction of the land itself was established. (Evid. Code, §§ 822, subd. (d), 814.)
In evaluating Caltrans' contention, the basic principle of "just compensation" in eminent domain proceedings provides the starting point for determining whether the cost of reproduction is an appropriate means for ascertaining the extent of damage sustained by a taking.[3]
(5) Just compensation is measured by what the owner has lost rather than what the condemner has gained. (People v. La Macchia (1953) 41 Cal.2d 738, 754 [264 P.2d 15]; Merced Irrigation Dist. v. Woolstenhulme (1971) 4 Cal.3d 478, 494 [93 Cal. Rptr. 833, 483 P.2d 1].) The principle sought to be achieved by the concept of just compensation is to reimburse the owner for the property interest taken and to place the owner in as good a position pecunarily as if the property had not been taken. (United States v. Virginia E. & P. Co. (1961) 365 U.S. 624, 633 [5 L.Ed.2d 838, 847, 81 S.Ct. 784]; Costa Mesa Union Sch. Dist. v. Security First Nat. Bk. (1967) 254 Cal. App.2d 4, 10 [62 Cal. Rptr. 113].) In many instances this principle can be served by ascertaining the fair market value of the property, that is, what a willing buyer would pay in cash to a willing seller. (See Merced Irrigation Dist. v. Woolstenhulme, supra, 4 Cal.3d at p. 494.) But this is not an absolute standard nor an exclusive method of valuation. (Napa Union High School Dist. v. Lewis (1958) 158 Cal. App.2d 69, 73 [322 P.2d 39].)
*325 Ascertainment of the cost of reproduction of the facilities is an acceptable approach to a determination of just compensation.
Utilization of this method may enable a court or jury to ascertain the amount of damage required as just compensation in situations where the market value or other acceptable standards of valuation cannot rationally be applied or where their application would not put the owner "`in as good a position ... as if his property had not been taken.'" (State of California v. United States (9th Cir.1968) 395 F.2d 261, 266.)
The case of Mayor and City Council of Baltimore v. United States (4th Cir.1945) 147 F.2d 786, cited by the state in support of its contention that cost of reproduction is not an acceptable means of valuation is factually distinguishable rendering it inapplicable.
(6) Plaintiff also seeks narrowly to restrict application of the cost of reproduction method of arriving at just compensation to a determination of the cost of "replacing or reproducing existing improvements and then, only ... [to] enhance the value of the property for its highest and best use." (Italics in original.) Plaintiff asserts a distinction between a determination of land value and costs of improvements and argues that the distinction precludes application of the reproduction method to a determination of land value. Plaintiff argues, "The cost of improvements can be determined by looking at prices reflected in the market place  so much per sack of cement, ..." while using it to determine land value "requires the development of an opinion that properties sold ... [is] comparable to properties hypothetically to be acquired."
We do not perceive the cost of reproduction method of ascertaining the value to be so restricted in its application. (7) The rules for determining value of condemned land are not to be considered inflexible. In each case just compensation is the goal and if rigid application of a rule tends to produce an injustice, the court must deviate from that rule. (See Napa Union High School Dist. v. Lewis, supra, 158 Cal. App.2d at p. 73.) Plaintiff's argument seems to suggest that methods of establishing just compensation are inflexible and jurisdictional. The contrary is true. They are procedural in nature only.
The goal to be achieved is payment to the condemnee of just compensation for its loss. Code of Civil Procedure section 1263.320, subdivision (b) provides in part, "The fair market value of property taken *326 for which there is no relevant market is its value on the date of valuation as determined by any method of valuation that is just and equitable." (8) The reproduction less depreciation method estimates the value of the land considered as vacant and available for improvement as well as depreciated replacement cost to any improvements. The method when applied to the factual context presented is not speculative as argued by the state. Defendant applied this method in an attempt to arrive at a fair value for its loss when the other two available methods (market data and income approach) were inappropriate, considering the nature of the property taken.
(9) In light of the provisions of section 1263.320, and the requirements of California Constitution, article I, section 19, that just compensation be determined and paid for land taken, the utilization of the cost of reproduction less depreciation was not precluded in this case by the provisions of Evidence Code section 822, subdivision (d), as argued by plaintiff. Although plaintiff apparently acknowledges the existence of the trilogy method of appraisal as defined in the Evidence Code, sections 815 to 820, it focuses on the language of Evidence Code section 822, subdivision (d), that "the following matter is inadmissible as evidence and is not a proper basis for an opinion as to the value of property:
".... .... .... .... ...
"(d) An opinion as to the value of any property or property interest other than that being valued."
Plaintiff would have us construe "inadmissible in evidence" as all-encompassing. It asserts the language precludes the expert from giving any opinion of value of nonsubject property when fixing the cost of replacement of the property taken, when that method is the only one of the recognized methods of valuation available. Such a contention has been previously decided to the contrary. (See San Diego Land etc. Co. v. Neale (1891) 88 Cal. 50, 67 [20 P. 372]; County of Contra Costa v. East Bay Municipal Dist. (1959) 175 Cal. App.2d 834, 836 [1 Cal. Rptr. 60]; People ex rel. Dept. of Public Wks. v. Murata (1958) 161 Cal. App.2d 369, 379-380 [326 P.2d 949]; State of Cal. ex rel. State Pub. Wks. Bd. v. Stevenson (1970) 5 Cal. App.3d 60, 64 [84 Cal. Rptr. 742].) To construe and apply Evidence Code section 822, subdivision (d), as urged by plaintiff would, in this instance, effectually deny the defendant recovery of just compensation for the land taken. Plaintiff would have us ascribe to the land *327 interest taken a nominal value only contrary to the constitutional requirement of payment of just compensation for the property taken.
Defendant's experts testified that the highest and best use of the subject property was as a transportation corridor; that the market data and income approach were inapplicable due to the unique nature of the right-of-way; and that the value of the right-of-way, in terms of cost of reproduction, could be determined either on the basis of the cost of other unimproved land in the area by reference to prior sales, or on the basis of the cost of acquiring property for a replacement right-of-way including the cost of acquiring improved parcels, relocation assistance and demolition. The evidence utilized by the defendant relative to estimated cost of acquiring comparable property (cost of reproduction) based on the average cost of other property in the area was properly admissible as a means of arriving at reproduction costs new less depreciation. (See 3 Cal. Law Revision Com. Rep. (1961) pp. A-23 - A-62.)

III
Finally, plaintiff contends that the trial court erroneously excluded testimony it offered as to the diminished value of defendant's right-of-way caused by plaintiff's taking a portion of that right-of-way for freeway use. The contention presented overlooks the fact that plaintiff's witness did testify as to the diminished value of the right-of-way without objection by defendant. He testified his appraisal was in part based upon the diminished value of the right-of-way; that evidence was the basis for an instruction given by the court that the jurors might consider the diminished use of the property in arriving at its value. The jurors were presented with all possible theories as to the proper method by which to determine just compensation. (10) Plaintiff also asserts that the defendant is only entitled to nominal damages as a result of that diminished value. The case authority relied upon by plaintiff in support of that assertion is inapposite; in each instance they involve transverse crossings which did not interfere with the railroad's operation and are not applicable or similar to a longitudinal taking such as is presented in this instance. A similar claim was rejected in Los Angeles v. Allen (1917) 32 Cal. App. 553, at page 561 [163 P. 697], where the court stated, "There is an important difference between the extension of a street crossing over a railroad track and a taking for the purpose of constructing a street longitudinally covering a right of way. `The right to take longitudinally is very different from the mere right to cross, for in the one case the rights of the railway *328 company are materially impaired, while in the other the taking is such that both uses can stand together.'" (See also City of Oakland v. Schenck (1925) 197 Cal. 458, 461 [241 P. 545].)
Application of the nominal damage theory is inappropriate as the take is longitudinal in nature and precludes any further use of the property by the railroad on the portion acquired by plaintiff.
The judgment is affirmed.
Puglia, P.J., and Regan, J., concurred.
A petition for a rehearing was denied September 19, 1978, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1978.
NOTES
[1] The Chase Manhattan Bank was a named defendant as a holder of a security interest in the property taken.
[2] A number of authorities have limited expansion of an easement for future needs and limited use to that at the time of creation of the easement. (See Colegrove W. Co. v. City of Hollywood (1907) 151 Cal. 425 [90 P. 1053]; McCarty v. Walton (1963) 212 Cal. App.2d 39 [27 Cal. Rptr. 792]; Goubert v. Pomona Valley Water Co. (1955) 137 Cal. App.2d Supp. 852 [289 P.2d 601]; Crimmins v. Gould (1957) 149 Cal. App.2d 383 [308 P.2d 786]; Smith v. Rock Creek Water Corp. (1949) 93 Cal. App.2d 49 [208 P.2d 705]; Bartholomew v. Staheli (1948) 86 Cal. App.2d 844 [195 P.2d 824].) However, the cases noted were concerned with easements either acquired by prescription or adverse use and thus limited by the scope of the original use and are not apposite to the instant circumstances.
[3] For a general discussion of the problems of valuation in eminent domain proceedings, see Clarke, Easement And Partial Taking Valuation Problems (1969) 20 Hastings L.J. 517-535; Carlson, Statutory Rules of Evidence for Eminent Domain Proceedings (1966) 18 Hastings L.J. 143-159.